515 P.2d 1180

**CITY OF PHOENIX, a municipal corporation, Petitioner,**

**v.**

**Jeremy BUTLER, Judge pro tem. of the Superior Court of the State of Arizona; Gary Peter KLAHR, real party in interest, Respondents.**

**No. 11341.**

Supreme Court of Arizona,
In Banc.

Nov. 21, 1973.

Joe R. Purcell, City Atty., by Barry Leverant and Alan S. Max, Asst. City Attys., Phoenix, for petitioner.

Gary Peter Klahr, in pro. per.

HOLOHAN, Justice.

The City of Phoenix, Petitioner, sought by the filing of a petition for special action to prevent the enforcement of a judgment by the Respondent Judge Pro Tempore which declared A.R.S. § 16–844(I) un-

constitutional and which judgment ordered the City to revise the instructions to voters on the ballots to be used at the primary election of November 13, 1973. After hearing arguments on the petition, we accepted jurisdiction and granted the petition of the City. A formal written order was issued preventing the enforcement of the judgment below, and we noted that a formal written opinion would follow in due course.

Chapter 12, Section 9 of the Charter of the City of Phoenix provides in part that the form of the ballot shall comply with the provisions of the law respecting ballots to be used at general elections with the names of candidates for office to be arranged as provided by law. The applicable provision of law governing the form of ballot for the general elections is A.R.S. § 16–844. Subsection I of that Section provides:

> "I. Immediately below the designation of the office to be voted for shall appear the words: 'Vote for one' (or more, according to the number to be elected)."

The parties were in agreement that the form of the ballot which the City intended to use for the election complied with the Charter and the applicable statute (A.R.S. § 16–844). There are six councilmen to be elected. The real party in interest, Respondent Klahr, argued that the form of ballot to be used was discriminatory and therefore improper. Klahr contended that the legend "Vote for Six" below the office of councilmen was misleading in that it conveyed to the mind of the voter the idea that he must vote for six. In support of this contention Klahr offered three witnesses at the hearing in the trial court, and each of the witnesses testified that at the previous city election where the same legend was used they believed that they must vote for six or their vote would not be counted. Klahr maintained that this misunderstanding discriminated against his position as a candidate in the election. He stated that he was running as an independent candidate and not part of any slate or ticket, but that there were other candidates on the ballot who were running as a slate or ticket. Klahr contended that his supporters should vote for him alone if he was to be assured of election, but if his supporters also voted for other candidates this tended to dilute his strength and to favor the slate candidates who were assured of a large number of votes from those who customarily voted for the members of the slate.

Much of the argument of Respondent Klahr is based on supposition and unsupported by any competent evidence. The ballot of the City listed the candidates for councilmen by name only, without designation of party, ticket, or slate. There was no evidence presented from which an actual breakdown of the voting pattern of voters in past elections could be determined so there is no evidence to support Klahr's contentions. It is just as plausible to believe that the Respondent, Klahr, who ran unsuccessfully for councilman two years ago, received his votes from voters who voted for him alone or who voted for some of the slate candidates but not all and chose instead to vote for Klahr rather than one of the other slate candidates. The speculation on this point does not satisfy the need for competent evidence.

The Respondent, Klahr, has cited a number of United States Supreme Court decisions: Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed. 2d 583 (1969); Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L. Ed.2d 45 (1970); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757; 88 L.Ed. 987 (1944); and Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). None of the authorities cited support the position of Respondent. It may be generally said that the authorities above cited apply to instances involving the denial of the vote or restrictions on voting. None of these situations is applicable to the case at issue.

There is no denial of the right to vote, nor is there any restriction on the exercise of that right.

Was the ballot legend misleading? Did substantial numbers of voters believe that they must vote for six or else? Other than the three witnesses offered by Respondent there is no evidence on this point. It must be noted, however, that the same form of instruction is found on the ballots of many states, and the same form of instruction has been placed on ballots in Arizona for well over 50 years, so the ballot legend is not new to the election laws of this State. Nor is the strategy of one candidate asking his supporters to vote for him alone (single shot) anything new in this State. Instances from precinct committeeman to state senator could be cited.

■ The voters of this State are expected to exercise reasonable judgment and are presumed to know the law of the state applicable to the exercise of the right of franchise. Hunt v. Campbell, 19 Ariz. 254, 169 P. 596 (1917). We find nothing in the legend used which should be misleading to the average voter.

■ It must be further pointed out that the ballot used at the election contained the following instructions to voters:

"NOTICE TO VOTERS: To vote for a candidate of your selection, punch the ballot card in the hole next to the right of the name of that candidate. Where two or more candidates for the same office are to be elected, *punch the ballot card in the hole next to the right of the names of all candidates for that office for whom you desire to vote, not to exceed, however, the number of candidates who are to be elected.* To vote for a person not on the ballot, write the title of the office and his name in the blank space left for that purpose on the write-in ballot envelope." (Emphasis supplied.)

It is true that to a few voters the process of casting a ballot is too complicated, but the Legislature is not required to write the statutes so that no one will ever have a question on the process. The test is whether the average voter is able to understand the intended meaning of the words used by the Legislature. The choice of words to be used on a ballot might be clearer. The Respondent Judge felt that "Vote for not more than six" was the better phraseology. There has been some suggestion that the wording might be "Vote for up to six." In any event it is not the function of the courts to rewrite statutes. City of Phoenix v. Lane, 76 Ariz. 240, 263 P.2d 302 (1953). The choice of the appropriate wording rests with the Legislature, and the court may not substitute its judgment for that of the Legislature.

In considering the constitutionality of the statutes enacted by the Legislature the presumption is that the statute is constitutional, and the party questioning the validity of the statute has the burden of overcoming that presumption. State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); Industrial Develop. Auth. v. Nelson, 109 Ariz. 368, 509 P.2d 705 (1973). The Court will uphold the legislation if there is any legal basis for its validity. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854 (1949). The evidence presented by Respondent Klahr failed to overcome the presumption of constitutionality of the statute in question, and his petition should have been dismissed.[1]

Relief granted.

HAYS, C. J., and CAMERON, V. C. J., concur.

STRUCKMEYER, Justice, with whom LOCKWOOD, Justice, concurs, dissenting.

This case was brought to test the constitutionality of A.R.S. § 16–844(I) as applicable to the November 13, 1973 Primary

---

1. It is noteworthy that after our order granting the petition of the City, the election was held, with the legend "Vote for Six," and the Respondent, Klahr, was elected as one of the councilmen.

Election in the City of Phoenix. Sample ballots distributed by the City, insofar as peritnent to the vote for councilmen, were in this form:

| 2 | Primary—Special Election — November 13, 1973 City of Phoenix, Arizona    Madison Park |
|---|---|

## COUNCILMEN

| | | |
|---|---|---|
| | GOODE, CALVIN C. | 42 ➤ |
| | GUTIERREZ, ROSENDO "ROSIE" | 43 ➤ |
| | HANCE, MARGARET T. | 44 ➤ |
| Vote for Six | JOLLY, L. B. "LOU" | 45 ➤ |
| | KLAHR, GARY PETER | 46 ➤ |
| | LEWKOWITZ, H. J. "JERRY" | 47 ➤ |
| | WEEKS, JAMES "JIM" | 48 ➤ |
| | ZAPIEN, DANNY | 49 ➤ |

PUNCH YOUR BALLOT CARD

[769Z]

Respondent, Klahr, in his action in the Superior Court of Maricopa County, Arizona, alleged that the words "Vote for Six" were misleading and deceptive in that the language implied that the voter was obligated to vote for six candidates for the council when, in fact, a voter has the right to vote for less than six, and that some voters would prefer to vote for only one candidate among those running. The Superior Court found as a fact, after an evidentiary hearing, that the instruction to vote for six was misleading and directed that these words be placed upon the ballot: "Vote for no more than six." But it does not take a judicial finding to establish what is baldly obvious. The unsophisticated are also entitled to the unimpaired exercise of constitutional rights.

By Article 7, § 12 of the Constitution of this State, the Legislature is directed to enact laws "to secure the purity of elections." The words "to secure the purity of elections" have cogent legal significance.

They import that a candidate for public office has a fundamental right to fair play in an honest election which cannot in any manner be curtailed without good cause. Any law which damages or impairs this fundamental right of citizenship subverts the purity of elections.

The question here is, how stringent a standard should this Court apply to insure the purity of elections. In this, no standard is acceptable except that which guarantees that all can vote intelligently and knowledgeably. To this end, such words should be placed upon the ballot as will unequivocally inform the voters that they can vote for six or any number less than six.

We are not here concerned with the "average voter", as the majority announce; rather, we are concerned with the understanding of *all* voters, and that *no* voter be mislead. By the knowledgeable exercise of the elective franchise minority voters can secure minority representation on the City Council.