866 P.2d 902

**RESOLUTION TRUST CORPORATION, an agency of the United States, as receiver for First American Savings, Inc., an Arizona corporation, Plaintiff–Appellant,**

v.

**CITY OF SCOTTSDALE, an Arizona municipal corporation, Defendant–Appellee.**

**No. 1 CA–TX 92–0002.**

Court of Appeals of Arizona, Division 1, Department T.

Dec. 28, 1993.

Stoops & Burns, P.C. by Timothy G. Burns, Daniel L. Kloberdanz, Phoenix, for plaintiff-appellant.

Office of the City Atty. by Jenae R. Naumann, Asst. City Atty., Scottsdale, for defendant-appellee.

## OPINION

FIDEL, Judge.

Resolution Trust Corporation (RTC), the receiver for First American Savings, Inc., a defunct savings and loan association, appeals from summary judgment granted to the City of Scottsdale rejecting First American's claim for a refund of transaction privilege taxes. First American was charged the taxes on the sale of a house that it had acquired

at a trustee sale from a debtor—a speculative builder—in default. Although the appeal presents many questions concerning First American's susceptibility to the tax, we need not resolve them. Instead, we decide that Scottsdale is obliged by federal law to forego the tax now that RTC has become First American's receiver.

## I. FACTS AND PROCEDURAL HISTORY

John and Deborah Ebdon, doing business as Cameo Homes, built and sold several houses in Scottsdale during the four years preceding the events that underlie this suit. In 1987, First American lent the Ebdons $419,000.00, evidenced by a promissory note secured by a deed of trust on a Scottsdale lot. After building a single-family residence on the lot, the Ebdons defaulted on the note. First American initiated a trustee sale and acquired the house and lot with a credit bid of $424,159.79. It later sold the house and lot for $450,000.00.

The City of Scottsdale taxes a property-owner as a speculative builder—or under certain circumstances as a speculative builder's successor—when the owner sells improved real property within twenty-four months of its improvement. Scottsdale Rev. Code §§ 416, 417 (1987). In this case, both the trustee sale to First American and First American's resale occurred within twenty-four months after the Ebdons had substantially completed building a residence on their lot. The City of Scottsdale sought transaction privilege taxes from First American as the successor to a speculative builder. After exhausting its remedies within the city administrative system, First American paid the assessment under protest and then filed this suit. On cross-motions for summary judgment, the tax court granted judgment for the City, holding First American liable for the tax, measured by its credit bid at the trustee sale.

The tax court ruled for the City in April of 1991 and reduced its ruling to judgment on October 30, 1991. On November 27, 1991, First American moved alternatively for reconsideration or relief from judgment. The motion asserted that on August 16, 1991, RTC had become receiver for First American and had assumed its rights, powers, and privileges pursuant to 12 U.S.C. § 1821(d)(2) (1989). RTC did not seek to intervene as a party, but argued that its accession as receiver invalidated the tax assessment against First American pursuant to 12 U.S.C. § 1441a(g) (1993), which exempts RTC from all state and local taxes other than *ad valorem* real property taxes. Simultaneously with its motion for reconsideration and relief from judgment, First American filed a notice of appeal to this court. The tax court concluded that it had lost jurisdiction to consider First American's motion upon the filing of the notice of appeal.

## II. SUBSTITUTION OF RTC

RTC has the status of a federal agency when it acts as receiver of an insured depository institution. *See* 12 U.S.C. § 1441a(b)(1)(B). RTC also succeeds "by operation of law" to "all rights, titles, powers, and privileges of the insured depository institution...." 12 U.S.C. § 1821(d)(2)(A); *see* 12 U.S.C. § 1441a(b)(4)(A). As receiver, RTC has thus succeeded to First American's power to appeal the tax court's judgment in this case.

The procedural vehicle for it to do so is Rule 27, Arizona Rules of Civil Appellate Procedure (ARCAP), which provides in part:

(b) **Substitution for Other Causes.** If substitution of a party is necessary for any reason other than death, substitution shall be effected in accordance with the procedure prescribed in subdivision (a).

ARCAP 27(a) permits substitution of a deceased party's personal representative when a party's death is brought to the attention of the court. RTC as receiver for First American Savings is functionally equivalent to a personal representative for a deceased party. By separate order, we add RTC as a party in its capacity as receiver and so amend the caption on appeal.

## III. IMMUNITY FIRST ASSERTED ON APPEAL

RTC argues that its immunity from state and local taxation under 12 U.S.C.

§ 1441a(g)[1] invalidates the Scottsdale transaction privilege tax that First American paid under protest before RTC became its receiver. The City objects to RTC making this argument for the first time on appeal. RTC replies that 12 U.S.C. § 1821(d)(13)[2] specifically empowers it to do so.

In considering this issue, we attribute no significance to the fact that, simultaneously with its notice of appeal, RTC addressed the issue of its immunity in a motion for reconsideration/relief from judgment filed with the trial court. As the notice of appeal deprived the trial court of any opportunity to consider the issue, filing such a memo was an empty formality in this case. For practical purposes, the issue of immunity was first raised on appeal.

Several federal circuit courts have rejected the argument that section 1821(d)(13) entitles the RTC to raise issues for the first time on appeal as of right. *E.g., In re 604 Columbus Ave. Realty Trust,* 968 F.2d 1332, 1343 (1st Cir.1992); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n* 885 F.2d 266, 275 (5th Cir.1989); *Baumann v. Savers Fed. Sav. & Loan Ass'n,* 934 F.2d 1506, 1511–12 (11th Cir.1991). Our research reveals no federal circuit decisions to the contrary.[3] *But cf. FDIC v. Hadid,* 947 F.2d 1153, 1157 (4th Cir.1991) (permitting the FDIC to raise "D'Oench, Duhme defense"[4] for first time on appeal because precluding defense would frustrate its underlying policies). The federal circuits have recognized, however, that even if they are not obliged by section 1821(d)(13) to entertain arguments that the RTC first raises on appeal, they may do so as a matter of discretion. *E.g., In re 604 Columbus Ave. Realty Trust,* 968 F.2d at 1343. As set out by the First Circuit in *Realty Trust,* the guiding criteria include:

> whether the new issue is purely legal, such that the record pertinent to the issue can be developed no further; whether the party's claim appears meritorious; whether reaching the issue would promote judicial economy because the same issue is likely to be presented in other cases; and whether declining to reach the argument would result in a miscarriage of justice.

Arizona appellate courts likewise have discretion to entertain arguments first raised on appeal. The general rule disfavoring such arguments is not a jurisdictional requirement, but reflects considerations of the orderly administration of justice. *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987). Appellate courts have discretion to consider questions of a general public nature for the first time on appeal, especially substantive law issues not affected by questions of fact. *Rubens v. Costello,* 75 Ariz. 5, 8–9, 251 P.2d 306, 308

---

1. 12 U.S.C. § 1441a(g) provides:
   The Corporation [RTC] and the Thrift Depositor Protection Oversight Board, the capital, reserves, surpluses, and asséts of the Corporation and the Thrift Depositor Protection Oversight Board, and the income derived from such capital, reserves, surpluses, or assets shall be exempt from State, municipal, and local taxation except taxes on real estate held by the Corporation, according to its value as other similar property held by other persons is taxed.

2. 12 U.S.C. § 1821(d)(13), entitled "Additional rights and duties," provides:
   **(A) Prior final adjudication**
   The Corporation shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.
   **(B) Rights and remedies of conservator or receiver**
   In the event of any appealable judgment, the Corporation as conservator or receiver shall—

   (i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights. . . .

3. Appellant refers to three Texas intermediate appellate court decisions for the proposition that § 1821 empowers the RTC to force an appellate court to hear an issue not raised below. *FSLIC v. T.F. Stone–Liberty Land Assocs.,* 787 S.W.2d 475 (Tex.Ct.App.1990); *FDIC/Manager Fund v. Larsen,* 793 S.W.2d 37 (Tex.Ct.App.1990); *FDIC v. Zoubi,* 792 S.W.2d 825 (Tex.Ct.App.1990). Our research discloses that all three decisions were reversed or overruled by the Texas Supreme Court in *Larsen v. FDIC/Manager Fund,* 835 S.W.2d 66 (1992).

4. *See infra* note 5 for explanation of "D'Oench, Duhme defense."

(1952). Such is the immunity question in this case.

■ In short, the federal case law to date does not favor the proposition that we are *required* by section 1821(d)(13) to permit RTC to raise the immunity issue for the first time on appeal. As both federal and Arizona cases recognize our discretion to do so, however, we choose to reach the issue that RTC has raised.

We recognize, in exercising our discretion, that if RTC had proceeded more expeditiously, it might have achieved a trial court ruling on the question of its immunity. That makes our decision to reach the issue closer in this case than in *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1512–14 (11th Cir.1991). There, in permitting the RTC's predecessor FSLIC to assert a defense under 12 U.S.C. § 1823(e) for the first time on appeal,[5] the Eleventh Circuit observed that the agency had not become conservator for the affected savings and loan until after judgment was entered and had lacked the opportunity to raise its argument below. *Accord RTC v. McCrory*, 951 F.2d 68, 71 (5th Cir. 1992); *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332 (1st Cir.1992).

Here, RTC did not become First American's receiver until four months after the trial court had rendered its decision on the merits. Yet two months remained before the trial court reduced its ruling to a formal judgment; in this period, RTC could have placed the issue of its immunity before the trial court. The immunity issue, however, as we have noted, was purely legal and required no factual development. Moreover, we recognize that the RTC was required, in restoring order to the chaos of our country's insolvent savings and loans, to come to grips with multiple lawsuits in various stages of proceeding. Accordingly, as we have discretion, we decline to use it to penalize the agency for not asserting its statutory immunity in this lawsuit with greater speed.

## IV. RTC'S IMMUNITY UNDER 12 U.S.C. § 1441a(g)

According to the RTC, to deny the refund that it seeks would violate the immunity of its "capital, reserves, surpluses, and assets" from local taxation under 12 U.S.C. § 1441a(g). The argument to the contrary turns on the fact that the City had already assessed and collected the tax from First American before RTC became First American's receiver. The assessment when made and paid did not contravene RTC's exemption from taxation, and the City seeks no additional amount. Therefore, the City insists, it does not attempt to *deplete* the "capital, reserves, surpluses, and assets" to which RTC succeeded as receiver.

The City acknowledges, as it must, that among the RTC's protected "assets" is First American's tax refund claim. However, the City distinguishes that claim—a cause of action—from the money First American paid the City. Because First American no longer possessed the money at the time of the receivership, the money itself did not become an asset of RTC. And though the refund claim became an asset, the City does not seek to tax that claim. In short, according to this argument, no RTC asset has been or will be subjected to local tax within the meaning of 12 U.S.C. § 1441a(g).

■ This highly semantic argument defies the sense of the statute, if not its words. The evident purpose of section 1441a(g) is to assure that RTC's asset pool for protecting the depositors of a failed insured depository institution will not be diminished by state and local taxes. Though our insured depository arrangements assign the federal government the lion's share of this protective burden, state and local governments bear a small part of the load by foregoing taxes that a healthy depository institution would have paid. The City here seeks to avoid that part

---

5. 12 U.S.C. § 1823(e) is the federal codification of the common law rule announced by *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), prohibiting the assertion against FDIC of agreements or conditions affecting loans extended by a federally insured depository institution, but not reflected in writing in the institution's official records. *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) broadened the rule to preclude asserting against the FDIC that the insured lender had induced a loan transaction by a misrepresentation not reflected in writing in the institution's official records.

of the load. To permit the City to prevail would permit local taxation to diminish RTC's asset pool in violation of the requirements of section 1441a(g).

■ If the timing of this case were different—if the disputed tax had accrued during the solvency of First American but had not been paid by the time RTC took charge—RTC's immunity undisputedly would have applied. *See, e.g., Fort Bend County Mun. Util. Dist. v. Gayle,* 755 F.Supp. 746 (S.D.Tex.1990). That here the tax was paid is, for statutory purposes, a distinction without a difference, because the payment was under protest. Depositors should not be penalized as a consequence of First American's compliance with the City's procedural requirement that the tax be paid first and challenged later. *Cf. Ward v. Board of County Comm'rs,* 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920) (requiring county to refund tax that was paid under protest and later adjudicated invalid); *McKesson v. Division of Alcohol Beverages and Tobacco,* 493 U.S. 916, 110 S.Ct. 275, 107 L.Ed.2d 255

(1990) (requiring state to provide remedy for tax that was paid under protest and later adjudicated invalid). The essential detail is that the tax was not yet final. *See* 12 U.S.C. § 1821(d)(13).[6] For that reason, as we interpret the purpose of section 1441a(g), this tax falls among the non-final revenues that local government must forego to enlarge the funds the RTC may use for depositor protection.

## V. CONCLUSION

For the foregoing reasons, we reverse and direct the trial court on remand to enter judgment for RTC.

TOCI, P.J., and CLABORNE, J., concur.

---

6. *See supra* note 2.