```
              SUPREME COURT OF ARIZONA
                      En Banc


CHRIS FLEISCHMAN, a registered    )  Arizona Supreme Court
voter in the City of Phoenix,     )  No. CV-06-0333-AP/EL
KATHY ROEDIGER, a registered      )
voter in the City of Phoenix,     )
ALFREDO GUTIERREZ, a registered   )  Maricopa County
voter in the City of Phoenix,     )  Superior Court
                                  )  No. CV 2006-013116
                                  )
          Plaintiffs/Appellees,   )
                                  )
             v.                   )  O P I N I O N
                                  )
PROTECT OUR CITY, a political     )
organization,                     )
                                  )
          Defendant/Appellant,    )
                                  )
MARIO PANIAGUA, in his official   )
capacity as City Clerk of the     )
City of Phoenix; HELEN PURCELL,   )
in her official capacity as       )
Recorder of Maricopa County,      )
Arizona; KAREN OSBORNE, in her    )
official capacity as Director of  )
Elections of Maricopa County,     )
Arizona; and DON STAPLEY, FULTON  )
BROCK, ANDREW KUNASEK, MAX        )
WILSON and MARY ROSE WILCOX, in   )
their official capacities as      )
Members of the Board of           )
Supervisors of Maricopa County,   )
Arizona; MAYOR PHIL GORDON, in    )
his official capacity as Mayor    )
of the City of Phoenix; DAVE      )
SIEBERT, PEGGY NEELY, PEGGY       )
BILSTEN, TOM SIMPLOT, CLAUDE      )
MATTOX, GREG STANTON, DOUG        )
LINGNER and MICHAEL JOHNSON, in   )
their official capacities as      )
Members of the City Council of    )
the City of Phoenix               )
                                  )
                  Defendants.     )
_____)
```

Appeal from the Superior Court in Maricopa County
The Honorable Janet E. Barton, Judge

**AFFIRMED**

_____

PERKINS COIE BROWN & BAIN P.A.                          Phoenix
      By   Charles A. Blanchard
           Rhonda L. Barnes
           Colin P. Ahler
And


ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN    San Francisco, CA
      By   Stephen P. Berzon
           Danielle E. Leonard
And


ROUSH, MCCRACKEN, GUERRERO, MILLER & ORTEGA            Phoenix
      By   Daniel R. Ortega, Jr.
Attorneys for Chris Fleischman, Kathy Roediger,
and Alfredo Gutierrez

AHWATUKEE LEGAL OFFICE                                 Phoenix
      By   David L. Abney
Attorneys for Protect Our City

GARY VERBURG, PHOENIX CITY ATTORNEY                    Phoenix
      By   Larry F. Felix, Assistant City Attorney
Attorneys for Amicus Curiae City of Phoenix
_____

**B A L E S**, Justice

¶1      The legislature has directed, as a matter of general law, that once petition signature sheets are filed in support of a ballot measure, "no additional petition sheets may be accepted for filing."  Ariz. Rev. Stat. ("A.R.S.") § 19-121(B) (2002). Consistent with this mandate, we hold that municipal laws that allow the filing of supplemental signatures in support of local ballot measures are invalid.  This opinion explains the reasons

2

for our order dated January 12, 2007, which affirmed the superior court's judgment barring an initiative from appearing on the ballot for a City of Phoenix election.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**      Protect Our City ("POC") proposed a City of Phoenix initiative measure concerning the enforcement of federal immigration laws.  On July 6, 2006, POC filed initiative petition sheets containing 21,297 signatures with the City Clerk.  The initiative required 14,844 valid signatures to qualify for placement on the ballot.  *See* Ariz. Const. art. 4, pt. 1, § 1(8) (signatures from fifteen percent of the qualified electors of the city are needed to propose an initiative); *see also* A.R.S. § 19-143(A) (2002) (number of signatures from qualified electors is calculated based on number of votes cast at last preceding election for mayor or city council).  The City Clerk determined that only 14,160 of the signatures submitted were valid and therefore issued a certificate of insufficiency.

**¶3**      POC then submitted 1,275 supplemental signatures pursuant to chapter XV, section 3(D) of the Phoenix City Charter ("Charter") and section 12-1102(a)(2) of the Phoenix City Code ("Code").  These municipal provisions authorize a one-time supplementation of signatures if the City Clerk deems an initiative petition insufficient for lack of valid signatures.  Charter ch. XV, § 3(D); Code § 12-1102(a)(2).  The supplemental

3

signatures must be filed within ten days of the filing of the certificate of insufficiency. Charter ch. XV, § 3(D); Code § 12-1102(a)(2).

¶4 After determining that enough of the supplemental signatures were valid, the City Clerk certified the initiative for the ballot. Fleischman, Roediger, and Gutierrez (the "challengers") then brought an action in superior court pursuant to A.R.S. § 19-121.03(B) (2002) challenging the Clerk's certification.

¶5 The superior court concluded that the City Charter and Code provisions conflict with A.R.S. § 19-121(B) and are invalid insofar as they allow the filing of supplemental signatures. Because POC lacked sufficient signatures without its supplemental filing, the superior court ruled that the initiative could not appear on the ballot.

¶6 POC timely appealed to this Court. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 19-121.03(B).

### DISCUSSION

### A. Jurisdiction

¶7 We invited the parties to address whether this Court's jurisdiction over this appeal is exclusive or concurrent with that of the court of appeals. When jurisdiction is concurrent and an appeal is initially filed with this Court, our long-

4

established practice has been to transfer the case to the court of appeals. *Perini Land & Dev. Co. v. Pima County,* 170 Ariz. 380, 382, 825 P.2d 1, 3 (1992); *Ariz. Podiatry Ass'n v. Dir. of Ins.*, 101 Ariz. 544, 549, 422 P.2d 108, 113 (1966). In election matters, when there is concurrent appellate jurisdiction, "[i]n the ordinary course, appeals . . . should be to the court of appeals. If special circumstances exist that require that this Court hear the appeal directly, a motion for transfer may be filed under ARCAP 19." *Hancock v. Bisnar*, 212 Ariz. 344, 346 n.3 ¶ 7, 132 P.3d 283, 285 n.3 (2006).

¶8    Section 19-121.03(B) provides that in actions challenging the certification of signatures for a ballot measure "[e]ither party may appeal to the supreme court within ten calendar days after judgment." Another statute, however, more generally affords appellate jurisdiction to the court of appeals "in all actions and proceedings originating in or permitted by law to be appealed from the superior court, except criminal actions involving crimes for which a sentence of death has actually been imposed." A.R.S. § 12-120.21(A)(1) (2003); *see also id*. § 12-2101(B) (2003) (allowing appeals to court of appeals from final judgments entered in superior court). Thus, the issue is whether § 19-121.03(B) gives this Court jurisdiction exclusive of that which otherwise exists in the court of appeals under its general jurisdictional statutes.

¶9        We dealt with a similar issue in *Perini*.  There we held that this Court and the court of appeals have concurrent jurisdiction over referendum appeals under A.R.S. § 19-122(C). 170 Ariz. at 382, 825 P.2d at 3.  In actions challenging the legal sufficiency of ballot measures, § 19-122(C), which has not been amended since 1992, provides that "[e]ither party may appeal to the supreme court within ten days after judgment."  We held that this language, which predated the creation of the court of appeals in 1964, did not give this Court exclusive jurisdiction, "[i]n light of the broad appellate jurisdiction vested in the court of appeals."  *Perini*, 170 Ariz. at 382, 825 P.2d at 3 (citing *Ariz*. *Podiatry*, 101 Ariz. at 547, 422 P.2d at 111).  Absent any expressed intent to give this Court exclusive jurisdiction, we did not interpret the statutes vesting appellate jurisdiction in this Court as limiting the jurisdiction that A.R.S. §§ 12-120.21(A)(1) and -2101 separately vest in the court of appeals. *See id*.

¶10       This case involves A.R.S. § 19-121.03(B), which addresses challenges to the certification of ballot measure petition signatures.  Much like the statute involved in *Perini*, it provides that "[e]ither party may appeal [the superior court's decision] to the supreme court within ten calendar days after judgment."  *Id*.  Section 19-121.03(B), however, was

6

enacted after the legislature created the court of appeals.[1] Nonetheless, as in *Perini*, the constitutional and statutory grants of jurisdiction indicate that this Court and the court of appeals have concurrent appellate jurisdiction. *See* 170 Ariz. at 382, 825 P.2d at 3; *see also Ariz. Podiatry*, 101 Ariz. at 547, 422 P.2d at 111.

¶11     As we explained in *Arizona Podiatry*, "[i]t has long been a general rule of law that a grant of jurisdiction to one court does not, in the absence of an express provision to that effect, imply that the jurisdiction is to be exclusively vested in that court." 101 Ariz. at 548, 422 P.2d at 112. Thus, unless the legislature has made clear that our jurisdiction is exclusive, our appellate jurisdiction is concurrent with that of the court of appeals.

¶12     There are very few instances in which this Court has been granted exclusive jurisdiction. The first is over "causes between counties." Ariz. Const. art. 6, § 5(2) (providing for "original and exclusive jurisdiction" in this Court over such matters). We also have exclusive jurisdiction over death penalty appeals, as A.R.S. § 12-120.21(A)(1) specifically exempts those cases from the jurisdiction of the court of

---

[1]     The language found in § 19-121.03(B) was first enacted in 1970 as § 19-121.04(B). 1970 Ariz. Sess. Laws, ch. 152, § 8. It was renumbered to § 19-121.03(B) in 1973. 1973 Ariz. Sess. Laws, ch. 159, § 7.

appeals. Finally, in the context of candidate nomination petition challenges, the legislature has specifically provided that the superior court's decision "shall be appealable *only* to the supreme court." A.R.S. § 16-351(A) (2006) (emphasis added). Because § 19-121.03(B) does not similarly provide an express grant of exclusive jurisdiction to this Court, we do not infer one. *See Ariz. Podiatry*, 101 Ariz. at 548, 422 P.2d at 112.

¶13 Consequently, we hold that we have concurrent jurisdiction with the court of appeals over appeals taken under § 19-121.03(B). We further reiterate the rule set forth in *Perini* that "[a]lthough we have concurrent jurisdiction with the court of appeals[,] . . . a party should file any future action [pursuant to § 19-121.03(B)] in the court of appeals." 170 Ariz. at 382, 825 P.2d at 3.

¶14 Under the particular circumstances of this case, however, we will exercise our jurisdiction to decide this appeal. Each side urges us to do so, and we have not previously held that our jurisdiction over this type of appeal is concurrent rather than exclusive. It is also important that the parties obtain a timely determination whether the proposed initiative will be on the ballot for the next city election. Finally, this case presents an issue of general importance because at least one other city allows the supplementation of petition signatures after a determination of insufficiency. *See*

8

Tucson City Code § 12-59.

## B. Merits

¶15     The merits of this appeal turn on whether the Charter and the Code conflict with A.R.S. § 19-121(B).  If a conflict does exist, the municipal provisions are invalid.  Ariz. Const. art. 4, pt. 1, § 1(8); *see Union Transportes de Nogales v. City of Nogales*, 195 Ariz. 166, 171 ¶ 21, 985 P.2d 1025, 1030 (1999).

¶16     The power of initiative and referendum is reserved by the Arizona Constitution to the qualified electors of cities, towns, and counties.  Ariz. Const. art. 4, pt. 1, § 1(8).  The Constitution allows localities to "prescribe the manner of exercising said powers," as long as they do so "within the restrictions of general laws."  *Id.*  Title 19 of the Arizona Revised Statutes sets forth the statutory guidelines for initiative and referendum procedures, and § 19-141 (2002) specifically addresses these procedures for cities, towns, and counties.

¶17     Before 1991, § 19-141(A) authorized cities and towns to establish their own ballot measure procedures, provided they were "less restrictive on the right to initiative or referendum" than state laws.  In the absence of local provisions, Title 19 would apply.  *Id.*  In 1991, the legislature amended the statute to establish certain uniform procedures.  1991 Ariz. Sess. Laws, 3d Spec. Sess., ch. 1, § 21.  The amended § 19-141(A) reads:

9

"The provisions of this chapter shall apply to the legislation of cities, towns and counties, except as specifically provided to the contrary in this article."  Thus, unless Title 19 specifically permits a city to depart from the general laws, the city has no power to do so.

¶18    The local provisions at issue are chapter XV, section 3(D) of the Phoenix Charter, and § 12-1102(a)(2) of the Phoenix City Code.  The Charter provides:  "Any initiative petition certified insufficient for lack of the number of signatures required by the constitution may be amended once by filing a supplementary petition within ten days of the filing of the certificate of insufficiency."  Likewise, the Code states: "Within ten days after the filing of the certificate of insufficiency additional signatures properly verified may be filed, but no further supplementation thereafter shall be permitted."

¶19    The relevant state law, A.R.S. § 19-121, sets forth the procedure for filing statewide initiative and referendum petitions.  It provides, in pertinent part:  "For purposes of this chapter, a petition is filed when the petition sheets are tendered to the secretary of state, at which time a receipt is immediately issued . . . . *After the issuance of the receipt, no additional petition sheets may be accepted for filing*."  *Id*. § 19-121(B) (emphasis added) (footnote omitted).  This provision

applies to local ballot measures pursuant to § 19-141(A), which also directs that the duties required of the secretary of state for statewide elections shall instead be performed "by the city or town clerk" for municipal elections.

¶20     The Charter and the Code provisions directly conflict with § 19-121(B).  While the state statute expressly prohibits the filing of additional petition sheets following the issuance of the receipt, the Charter and the Code allow the supplementation of signatures under certain circumstances.  Therefore, unless Title 19 specifically authorizes cities to establish their own procedures in this area, these local provisions are invalid.

¶21     POC argues that such authorization comes from § 19-141(D).  This section provides:

> The procedure with respect to municipal and county legislation shall be as nearly as practicable the same as the procedure relating to initiative and referendum provided for the state at large, *except the procedure for verifying signatures on initiative or referendum petitions may be established by a city or town by charter or ordinance.*

*Id.* (emphasis added).  The Charter and the Code provisions, POC contends, constitute part of the local signature verification process, and thus no conflict exists.

¶22     POC urges us to impart a meaning to § 19-141(D) that its language does not support.  Both state and city laws distinguish between the filing of petition signature sheets and

the procedures for verifying submitted signatures. Under state law, A.R.S. § 19-121 outlines the procedure for filing signature sheets. "[A] petition is filed when the petition sheets are tendered" to the filing officer, a receipt is then issued "immediately," and thereafter "no additional petition sheets may be accepted for filing." *Id.* § 19-121(B). The process for verifying submitted signatures, in contrast, is separately governed by A.R.S. §§ 19-121.01, -121.02, and -121.04 (2002), which provide that filed signature sheets will be verified by the relevant county recorder.

¶23 Consistent with A.R.S. § 19-141(D), Phoenix has opted to have the City Clerk, rather than the county recorder, verify signatures on petition sheets. The City's procedure for verifying signatures appears in City Code § 12-1108. If the verification process indicates that insufficient signatures have been submitted, the Clerk issues a "certificate of insufficiency" and the ballot measure proponent is then allowed additional time in which "additional signatures *properly verified* may be filed." *Id*. § 12-1102(a)(2) (emphasis added). Thus, the City Code also distinguishes the filing of signature sheets from the procedure for verifying the signatures.

¶24 The legislature has directed that the general laws governing the procedures for ballot measures shall apply to municipalities and counties "except as specifically provided to

12

the contrary" in state law.  A.R.S. § 19-141(A).  The general laws bar the filing of additional petition sheets after the initial filing.  *Id*. § 19-121(B).  The legislature has not authorized municipalities to accept supplemental signatures by authorizing cities and towns to establish the "procedure for verifying signatures" for ballot measures, § 19-141(D).  Such a procedure contravenes § 19-121(B).

¶25     We therefore hold that chapter XV, section 3(D) of the Phoenix City Charter and § 12-1102(a)(2) of the Phoenix City Code conflict with A.R.S § 19-121(B).  The city provisions are invalid insofar as they allow the filing of supplemental signatures after the initial filing of a ballot measure petition.

¶26     The challengers request an award against the City of their attorneys' fees on appeal pursuant to A.R.S. § 12-2030(A) (2003).  This statute directs the award of fees in favor of private parties who prevail in actions to compel public officers to perform duties imposed upon them by law.  We deny the request for fees because this appeal involves a challenge under A.R.S. § 19-121.03(B) to the City Clerk's completed certification rather than a mandamus action under A.R.S. § 19-121.03(A) to compel the Clerk to perform a certification.

**CONCLUSION**

¶27     For the foregoing reasons, we affirm the judgment of

13

the superior court enjoining the placement of the initiative on the ballot.

_____
W. Scott Bales, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice