212 P.3d 133

**Randy L. JONES, a citizen and qualified elector of the City of Phoenix, Plaintiff/Appellee,**

**v.**

**Mario PANIAGUA, in his official capacity as the Phoenix City Clerk; Phil Gordon, in his official capacity as Mayor of the City of Phoenix; Peggy Neely, in her official capacity as member of the Phoenix City Council and Vice Mayor; Thelda Williams, in her official capacity as member of the Phoenix City Council; Maria Baier, in her official capacity as member of the Phoenix City Council; Tom Simplot, in his official capacity as member of the Phoenix City Council; Claude Mattox, in his official capacity as member of the Phoenix City Council; Greg Stanton, in his official capacity as member of the Phoenix City Council; Michael Nowakowski, in his official capacity as member of the Phoenix City Council; Michael Johnson, in his official capacity as member of the Phoenix City Council; Frank Fairbanks, in his official capacity as City Manager of the City of Phoenix; and the City of Phoenix, Defendants/Appellants.**

**Holl Ander Properties, an Arizona limited liability company, Intervenor.**

**Nos. 1 CA–CV 08–0225 EL, 1 CA–CV 08–0499 EL.**

Court of Appeals of Arizona, Division 1, Department E.

March 26, 2009.

---

442

Gammage & Burnham, P.L.C. By Lisa T. Hauser, Heather J. Boysel, Phoenix, Attorneys for Appellee.

Gary Verburg, City Attorney, City of Phoenix By Bill C. Solomon, Assistant City Attorney, Phoenix, Attorneys for Appellants.

## OPINION

KESSLER, Acting Presiding Judge.

¶ 1 These consolidated appeals raise the question whether appellant, the City of Phoenix ("City" or "Phoenix"), may enforce an ordinance that bases the number of signatures required for referendum petitions on the last mayoral election preceding a referendum application even though a run-off election for city council came after the mayoral election. Specifically, we must address whether Chapter XVI, Section 3 of the Phoenix City Charter ("Charter") conflicts with Arizona Revised Statutes ("A.R.S.") section 19–142(A) (2002). We must also address whether the appellee is entitled to an award of attorney's fees under A.R.S. § 12–2030 (2003). We hold that a conflict exists and affirm the superior court's order requiring Phoenix to use A.R.S. § 19–142(A) to compute the number of signatures. We also affirm the award of attorney's fees to the appellee.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On December 19, 2007, the Phoenix City Council ("Council") approved an amendment and related zoning change to the City's General Plan Land Use Map to provide for the development of attached duplexes and townhomes/apartments. The amendment provided for an increase in residential units from zero to one to fifteen or more on approximately 27.45 acres of land near 27th Avenue and Baseline Road. The zoning change modified the property classification from "Ranch or Farm Residence" into two new classifications of "Multiple–Family Residence."[1] On January 9, 2008, the Council adopted Resolution 20614 and Ordinance G–5073 corresponding to the amendment and zoning change, respectively.

¶ 3 Appellee Randy L. Jones ("Jones") submitted applications for referendum petitions against Resolution 20614 and Ordinance G–5073. The City Clerk ("Clerk") assigned Jones referendum numbers R–1–08 and R–2–08. In addition, pursuant to Phoenix City Charter Ch. XVI, § 3, the Clerk advised that each referendum petition required 9,798 valid signatures based on ten percent of the total number of votes cast at the last mayoral election held on September 11, 2007. Opposing the requirement of 9,798 valid signatures, Jones argued that under A.R.S. § 19–142(A), the number of signatures should be 2,727 based on ten percent of the total number of votes cast at the more recent council run-off election held on November 6, 2007.[2]

¶ 4 Jones submitted petitions R–1–08 and R–2–08 to the Clerk, each with approximately 8,000 signatures. Jones continued to dispute the signature requirement. The Clerk rejected Jones's petitions because he determined they lacked the 9,798 signatures as required by the Phoenix City Charter Ch. XVI, § 3. Because the petitions thus were facially invalid, the Clerk did not process them to verify the number of acceptable signatures.

¶ 5 Jones filed a complaint for special action and injunctive relief in the superior court. He requested, among other things, that the court order the Clerk to perform his duties by calculating the required number of referendum petition signatures as 2,727. Jones also requested attorney's fees and costs pursuant to A.R.S. § 12–2030. The superior court granted Jones relief on the merits of his claims and Phoenix filed a timely notice of appeal (1 CA–CV 08–0225 EL) pursuant to A.R.S. § 19–122(A) (2002)

---

1. Specifically, the change allowed for a modification from "Suburban S–1 District" on all 27.45 acres to "R–2" on 7.65 acres and "R–3A" on 19.8 acres.

2. A.R.S. § 19–142(A) provides:
   The whole number of votes cast at the city or town election *at which a mayor or councilmen were chosen last preceding the submission of the application for a referendum petition* against an ordinance, franchise or resolution shall be the basis on which the number of electors of the city or town required to file a referendum petition shall be computed.
   (Emphasis added). Phoenix City Charter, Ch. XVI, § 3 provides, in relevant part, that a referendum petition is valid if signed by
   [q]ualified electors of the City, equal in number to ten per centum of the total number of votes cast *at the last preceding general City election at which a Mayor was elected* . . . .
   (Emphasis added).

and Arizona Rule of Civil Appellate Procedure ("Ariz. R. Civ.App.P.") 9(a). The court also awarded Jones attorney's fees and costs and Phoenix filed a timely notice of appeal (1 CA–CV 08–0499 EL).

¶ 6 We have jurisdiction pursuant to Ariz. R. Civ.App. P. 8.1(h), A.R.S. §§ 19–121.03(B) (2002), 19–141(D) (2002), 12–120.21 (2003), and 12–2101(B), (C), and (F)(2) (2003). *See Fleischman v. Protect Our City*, 214 Ariz. 406, 407–09, ¶¶ 7–13, 153 P.3d 1035, 1036–38 (2007). We consolidated the two appeals.

## ANALYSIS

### I. Standard of Review

¶ 7 Because the parties do not dispute the facts, we review the judgment *de novo. City of Tucson v. Consumers for Retail Choice Sponsored by Wal–Mart*, 197 Ariz. 600, 602, ¶ 4, 5 P.3d 934, 936 (App.2000); *Herman v. City of Tucson*, 197 Ariz. 430, 432, ¶ 5, 4 P.3d 973, 975 (App.1999). In addition, "[w]e also review *de novo* statutory interpretation issues ... because they involve questions of law." *Herman*, 197 Ariz. at 432, ¶ 5, 4 P.3d at 975 (quoting *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996)).

### II. Statutory Interpretation

¶ 8 The issue on appeal is whether Phoenix City Charter, Ch. XVI, § 3 conflicts with A.R.S. § 19–142(A). If it does, the statute controls, that section of the Charter is invalid, and the required number of petition signatures is 2,727. Arizona Const. art. 4, pt. 1, § 1(8) (2001); Phoenix City Charter, Ch. XVI, § 3. If it does not, then that section of the Charter controls and the required number of petition signatures is 9,798. In other words, if the statute controls, Jones's petitions, each containing approximately 8,000

signatures, would be facially sufficient as to the number of signatures and the Clerk would be required to process them. For the reasons stated below, we hold that the Charter conflicts with A.R.S. § 19–142(A), and therefore the statutory requirement controls.

■ ¶ 9 While the Arizona Constitution gives localities broad initiative and referendum powers, when a local law conflicts with a state statute, the local law is invalid. *Fleischman*, 214 Ariz. at 409, ¶ 15, 153 P.3d at 1038; Ariz. Const. art. 4, pt. 1, § 1(8).[3] Localities may "[p]rescribe the manner of exercising said powers, as long as they do so within the restrictions of general laws." *Id.* at 409, ¶ 16, 153 P.3d at 1038 (citing Ariz. Const. art. 4, pt. 1, § 1(8)) (internal quotations omitted).

■ ¶ 10 In addition, the Constitution dictates the requirements for calculating the number of electors needed to initiate a referendum: "[t]en per centum of the electors may propose the Referendum ... [and] cities and towns may prescribe the basis on which said percentages shall be computed." Ariz. Const. art. 4, pt. 1, § 1(8). But, again, that power is only effective "until provided by general law." *Id.* Thus, by the plain language of the Constitution, Arizona statutes may limit Phoenix's referendum power by prescribing the manner of validating referenda as well as the basis for calculating the percentage of referendum petition signatures.

¶ 11 Turning to the Arizona statutes, "[t]he legislature has directed that the general laws governing the procedures for ballot measures shall apply to municipalities and counties 'except as specifically provided to the contrary.'" *Fleischman*, 214 Ariz. at 410, ¶ 24, 153 P.3d at 1039 (quoting A.R.S § 19–

---

**3.** Ariz. Const. art. 4, pt. 1, § 1(8) provides:

The powers of the Initiative and the Referendum are hereby further reserved to the qualified electors of every incorporated city, town, and county as to all local, city, town, or county matters on which such incorporated cities, towns, and counties are or shall be empowered by general laws to legislate. Such incorporated cities, towns, and counties may prescribe the manner of exercising said powers *within the restrictions of general laws.* Under the

power of the Initiative fifteen per centum of the qualified electors may propose measures on such local, city, town, or county matters, and ten per centum of the electors may propose the Referendum on legislation enacted within and by such city, town, or county. *Until provided by general law, said cities and towns may prescribe the basis on which said percentages shall be computed.*
(Emphasis added).

141(A)). Here, Title 19 has not permitted Phoenix to depart from the law's prescriptions.

¶ 12 The crux of the dispute revolves around the language of A.R.S. § 19–142(A), which, as set forth *supra* n. 2, provides:

> The whole number of votes cast at the city or town election *at which a mayor or councilmen were chosen last preceding the submission of the application for a referendum petition* against an ordinance, franchise or resolution shall be the basis on which the number of electors of the city or town required to file a referendum petition shall be computed.

(Emphasis added). In contrast, the Phoenix City Charter, Ch. XVI, § 3 provides, in relevant part, that a referendum petition is valid if signed by "[q]ualified electors of the City, equal in number to ten per centum of the total number of votes cast *at the last preceding general City election at which a Mayor was elected ....*" (Emphasis added).

¶ 13 Jones argues that the statutory language "is clear and unambiguous" and it requires Phoenix to "use the *most recent* election preceding the filing of the referendum application at which either a mayor or councilmen were chosen." By contrast, Phoenix argues that the statutory language is ambiguous, interpreting the statute as allowing cities to choose "either a mayoral election or a council election, depending upon whether all of a city's qualified electors were eligible to vote at that election." Hence, this dispute presents us with a question of statutory interpretation.

¶ 14 When construing a statute, the principal goal is "[t]o fulfill the intent of the legislature...." *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003) (quoting *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)). The most reliable indicator of that intent is the statutory language, and if it is "[c]lear and unambiguous, we must give effect to that language and need not employ other rules of statutory construction." *State v. Riggs,* 189 Ariz. 327, 333, 942

P.2d 1159, 1165 (1997); *see also, Mejak v. Granville,* 212 Ariz. 555, 557, ¶ 8, 136 P.3d 874, 876 (2006). We will, however, apply other principles of construction if applying the plain meaning of a statute "[w]ould lead to impossible or absurd results." *Bilke,* 206 Ariz. at 464, ¶ 11, 80 P.3d at 271. Otherwise, "[t]he court must assign to the language its 'usual and commonly understood meaning unless the legislature clearly intended a different meaning.'" *Id.* at 464–65, ¶ 11, 80 P.3d at 271–72 (quoting *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990)). Finally, if a statutory provision is not clear, we will consider other factors, such as the whole statutory scheme.[4] *Parrot v. DaimlerChrysler Corp.,* 212 Ariz. 255, 258, ¶ 18, 130 P.3d 530, 533 (2006).

¶ 15 We hold that A.R.S. § 19–142(A) is clear and unambiguous. The number of qualified signatures required for a valid referendum petition is based on "[t]he whole number of votes cast at the city or town election at which a mayor or councilmen were chosen last preceding the submission of the application for a referendum petition...." *Id.* We agree with the superior court that the provision's plain meaning requires Phoenix to base the referendum signature requirement on the most recent mayoral or council election prior to the referendum petition application regardless whether it was a citywide or district election. Because the language is clear, we must give effect to it as written. *Riggs,* 189 Ariz. at 333, 942 P.2d at 1165. Therefore, no other modes of statutory construction are necessary. *Id.* Moreover, the plain meaning of the statute does not lead to an impossible or absurd result.

¶ 16 Phoenix argues that the Charter does not conflict with A.R.S. § 19–142(A) because the statute refers to "or," thus meaning that any city has a choice between basing the number of signatures on a mayoral or a city council election, provided that it was the last election in time. Accordingly, the City contends that it merely chose the mayoral election as the preferred alter-

---

4. Depending on the need for clarity, this court employs a multitude of factors to determine legislative intent: "[t]he statute's context, subject matter, historical background, effects and conse-

quences, and spirit and purpose." *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

native. We disagree for several reasons. Initially, this argument ignores A.R.S. § 19–143(A) (2002), which provides that as to initiatives a city may use alternative means of computing the required number of signatures other than the statutory requirement that the number of signatures has to be based on the "last preceding" mayoral or counsel election. The language of § 19–143(A) is substantially similar to that of A.R.S. § 19–142(A) with the exception that § 19–143(A) expressly provides localities a choice:

> The whole number of votes cast at the city or town election at which a mayor or councilman was chosen last preceding the submission of the application for an initiative petition is the basis for computing the number of qualified electors of the city or town required to sign the petition *unless the city or town by charter or ordinance provides an alternative basis for computing the number of necessary signatures.*

A.R.S. § 19–143(A) (emphasis added). Here, by contrast, there is no specific choice given in A.R.S. § 19–142(A). If the legislature intended to provide an alternative basis on which to compute qualified electors for referendum purposes, it could have simply written it as such; however, the legislature did not do so in A.R.S. § 19–142(A). *See U.S. Parking Sys. v. City of Phoenix,* 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989) ("Where a term is used in one provision of a statute and omitted from another, that term should not be read into the section where it is omitted.").

¶ 17 Additionally, adoption of the City's argument could lead to unbridled discretion by a city clerk. Specifically, if a city or town charter does not codify which of the alleged alternatives in A.R.S. § 19–142(A) the clerk must use, he or she could simply decide to use the mayoral election if he or she did not favor a referendum or a non-citywide council

election if he or she favored it. In other words, the signature requirements for referendum petitions could be established based upon the clerk's preference in support or opposition to the merits of a referendum, an unconstitutional practice. *See Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) ("[g]overnment may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored . . . views.").

¶ 18 Phoenix also argues that reading the statute as precluding a choice between the use of mayoral and city council elections could lead to an absurd result. It raises the hypothetical that in a small town with an at-large election, the number of votes needed for a referendum would be greater than in a large city when the votes might be based on a district election. As we understand the City's argument, in a town with 10,000 people voting in an at-large election the number of signatures for a referendum would be 1,000 while in a city with one million people the number might be 500 if the last election was for a single district seat and only 5,000 people voted. Statutes, however, do not necessarily lead to perfect results in all cases; unless the statute results in absurdity, it is lawful. *See Evans Withycombe, Inc. v. Western Innovations, Inc.,* 215 Ariz. 237, 240, ¶ 12, 159 P.3d 547, 550 (App.2006) (An absurd result is one "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.") (quoting *State v. Estrada,* 201 Ariz. 247, 251, ¶ 17, 34 P.3d 356, 360 (2001)).

¶ 19 Despite the plain meaning of § 19–142(A), Phoenix also makes a number of arguments about the intentions of the legislature and the framers of the Arizona Constitution based on constitutional and legislative history.[5] But in doing so it asks us

5. For example, Phoenix argues that the Constitution's framers intended that a greater percentage of electors is necessary to place a referendum on a city ballot. The City also argues that the framers gave localities "home rule" by including the last sentence of art 4, pt. 1, § 1(8) of the Constitution, which gives localities referendum power "until provided by general law." Phoenix also contends that the 1915 Legislature, which established the basis for calculating ten percent of a city's qualified electors for referendum petitions, required citywide elections for council. Adoption of these arguments would require us to ignore the plain meaning of § 19–142(A), which we cannot and will not do.

to ignore basic principles of statutory construction by skipping the plain meaning of a statute and considering the statute's history. The best indicator of legislative intent is the statutory language. If it is clear and does not result in absurdity, then we cannot be persuaded by arguments related to history. *Riggs,* 189 Ariz. at 333 n. 4, 942 P.2d at 1165 n. 4. Because the Charter limits the signature requirement to a calculation based solely on the most recent mayoral general election, it conflicts with A.R.S. § 19–142(A) and therefore is invalid.

### III. Attorney's Fees

■ ¶ 20 In 1 CA–CV 08–0499 EL, Phoenix contends the superior court improperly awarded attorney's fees and costs to Jones pursuant to A.R.S. § 12–2030. It argues § 12–2030 is inapplicable because: (1) § 12–2030 does not apply to statutory special actions; and (2) this case is not a mandamus action. We disagree and hold § 12–2030 applicable.[6] Therefore, we affirm the superior court's award of attorney's fees and hold Jones is entitled to attorney's fees and costs on appeal.

■ ¶ 21 Whether A.R.S. § 12–2030 applies is an issue of law, which we review *de novo. John C. Lincoln Hosp. and Health Corp. v. Maricopa County,* 208 Ariz. 532, 545, ¶ 45, 96 P.3d 530, 543 (App.2004); *Motel 6 Operating Ltd. P'ship v. City of Flagstaff,* 195 Ariz. 569, 572, ¶ 17, 991 P.2d 272, 275 (App.1999). A.R.S. § 12–2030 directs courts to award attorney's fees to a successful party in a mandamus action when that party:

> [p]revails by an adjudication on the merits in a civil action brought by the party against the state, any political subdivision of this state or an intervenor to compel a state officer or any officer of any political

subdivision of this state to perform an act imposed by law as a duty on the officer. *Id.*

¶ 22 First, Phoenix contends that since this case is a statutory special action, A.R.S. § 12–2030 is inapplicable because it is limited to traditional writs of mandamus. We agree this case is a statutory special action because Jones sought mandamus relief against the Clerk pursuant to A.R.S. § 19–122(A). *See* Ariz. R.P. Spec. Act. 1(b) ("Where a statute expressly authorizes proceedings under ... mandamus ... the proceedings shall be known as a statutory special action ...."); *see infra* ¶¶ 25–28. We disagree, however, that this designation precludes applicability of A.R.S. § 12–2030.

¶ 23 Phoenix cites *Circle K Convenience Stores, Inc. v. City of Phoenix,* 178 Ariz. 102, 103, 870 P.2d 1198, 1199 (App.1993), for its claim that § 12–2030 is inapplicable to statutory special actions. *Circle K* involved a statutory special action filed under A.R.S. § 9–462.06(K) (2008).[7] There, the court held that when an action is filed under a statutory special action pursuant to § 9–462.06(K), § 12–2030 does not apply because "[i]t is a part of the Arizona statutes involving the traditional writ of mandamus." *Circle K,* 178 Ariz. at 103, 870 P.2d at 1199.

¶ 24 *Circle K's* holding does not preclude the application of § 12–2030 to all statutory special actions, as Phoenix contends. In *Circle K,* the statutory special action sought was for a form of certiorari, seeking relief when a "board or officer, exercising judicial functions, has exceeded its jurisdiction." *Id.* at 103, 870 P.2d at 1199. By its terms, A.R.S. § 12–2030 applies to mandamus actions, not certiorari actions. *Circle K* precluded the application of § 12–2030 to statutory special actions when the action is for certiorari proceedings. *Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction,* 198 Ariz.

---

6. Phoenix did not argue in the superior court the inapplicability of § 12–2030 to statutory special actions, nor did it raise this issue in 1 CA–CV 08–0225 EL. However, we have discretion to address this issue on appeal. *Resolution Trust Corp. v. City of Scottsdale,* 177 Ariz. 234, 237, 866 P.2d 902, 905 (App.1993).

7. A.R.S. § 9–462.06(K) permits a person to "[f]ile a complaint for special action in the superior court...." It is a statutory special action pursuant to Ariz. R.P. Spec. Act. 1(b) because it expressly authorizes certiorari proceedings.
   We cite to the current version of this statute because no material changes relevant to this case have been made.

493, 503, ¶ 31, 11 P.3d 1032, 1042 (App.2000) (explaining the holding in *Circle K* as "denying fees under § 12–2030 when mandamus relief not sought"); *see Fleischman,* 214 Ariz. at 410, ¶ 26, 153 P.3d at 1039 (denying request for attorney's fees pursuant to § 12–2030 because the appeal was statutory special action brought under § 19–121.03(B), which authorizes certiorari, not mandamus).[8] As explained below, however, this is a mandamus proceeding, and the holding in *Circle K,* therefore, is inapplicable.

¶ 25 Second, Phoenix contends Jones is not entitled to attorney's fees pursuant to A.R.S. § 12–2030 because it argues this is not a mandamus action. Believing that this case challenges the Clerk's completed referendum petition certification and is not an effort to compel the Clerk to perform his duties, Phoenix claims § 12–2030 is inapplicable.

■ ¶ 26 Section 12–2030 has four requirements a plaintiff must satisfy to be entitled to attorney's fees: "Plaintiffs must establish that they (1) prevailed on the merits (2) in a civil action (3) filed against the State or a political subdivision of the State (4) to compel a State officer or any officer of any political subdivision to perform a duty imposed by law." *Bilke v. State,* 221 Ariz. 60, 62, ¶ 7, 209 P.3d 1056, 1058 (Ariz.App. 2009).

¶ 27 Jones prevailed on the merits in a civil action filed against an officer of a political subdivision. Thus, the remaining issue is whether Jones sought to compel the Clerk to perform a duty imposed by law. We find that he did. Jones explicitly filed a complaint for special action to compel the Clerk to perform his duties by calculating the required number of referendum petition signatures as 2,727. By contrast, the appeal in *Fleischman,* which Phoenix relies upon, was not a mandamus action but was a certiorari action because it was a challenge to the Phoenix City Clerk's completed petition certification rather than a challenge to compel him to perform a certification. *Fleischman,*

214 Ariz. at 410, ¶ 26, 153 P.3d at 1039. Therefore, A.R.S. § 12–2030 is applicable.

¶ 28 Even if Jones's prayer for mandamus relief was not explicit, this appeal is a "mandamus-type" appeal. *Motel 6 Operating Ltd. P'ship,* 195 Ariz. at 572, ¶ 17, 991 P.2d at 275. Jones seeks to compel the Clerk to process his referendum petitions, claiming the general law requires the Clerk to do so. This challenge is similar to that found in *Motel 6 Operating Ltd. P'ship.* There, the court found a "mandamus-type" action when "[p]laintiffs successfully sought to compel the City's zoning officials to issue [ ] permits that would have been issued had the [city's code] been in compliance with state law." *Id.* at ¶ 17. The court held that A.R.S. § 12–2030 applies to mandamus-type actions and that awarding attorney's fees was mandatory. *Id.* Similarly, here, Jones's claim presumes the Clerk would have processed the referendum petitions had the Charter been in compliance with state law. Thus, at the least, this is a mandamus-type action and A.R.S § 12–2030 applies.

## CONCLUSION

¶ 29 For the above reasons, we affirm the superior court's order requiring that the Clerk process the referendum petitions to determine if they contain the requisite 2,727 qualified electors' signatures based on the November 6, 2007 council run-off election. Further, we affirm the superior court's award of attorney's fees and costs and we grant Jones reasonable attorney's fees and costs on appeal if Jones complies with Ariz. R. Civ.App. P. 21.

CONCURRING: ANN A. SCOTT TIMMER, Chief Judge and JOHN C. GEMMILL, Judge.

---

**8.** In any event, nothing in the clear language of § 12–2030 limits an award of attorney's fees to non-statutory special actions. The statute provides that a party is entitled to an award of such fees when he or she "[p]revails by an adjudication on the merits ... against ... any political subdivision of this state ... to compel [an officer]

... to perform an act imposed by law as a duty on the officer [of such subdivision]." We will not add additional requirements or limitations to those imposed by the legislature in a clearly worded statute. *City of Phoenix v. Butler,* 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973).