574 P.2d 57

**Jack FIELDS and Premilla Fields, husband and wife, Appellants,**

v.

**ARIZONA TITLE INSURANCE AND TRUST COMPANY, Appellee.**

**No. 2 CA–CIV 2570.**

Court of Appeals of Arizona, Division 2.

Dec. 8, 1977.

Rehearing Denied Jan. 11, 1978.

Review Denied Jan. 31, 1978.

Russo, Cox, Dickerson & Cartin, P. C. by J. Patrick Butler, Tucson, for appellants.

O'Meara, Michela, Brogna & Weber by Gerard R. O'Meara, Tucson, for appellee.

Bruce E. Babbitt, Atty. Gen. by Ian A. Macpherson, John William Ranby, Asst. Attys. Gen., Phoenix, for amicus curiae The State of Arizona ex rel. Arizona Dept. of Revenue.

OPINION

RICHMOND, Judge.

Appellants and another couple, the Butlers, were the owners of record of a parcel of real property in Pima County. The State of Arizona pursuant to A.R.S. § 42–1335 issued notices and claims of three transaction privilege tax liens against the appellants and the Butlers. The notices and claims of liens totalling $1,993.52 were duly recorded on April 6, 1961, in the office of the Pima County Recorder. In 1970, the appellants and the Butlers sold the real property and Arizona Title Insurance and Trust Company was called upon to issue a title insurance policy to the purchaser. It reported that the tax liens and a mortgage of record constituted clouds on the title.

Rather than pay the taxes and the mortgage debt, the sellers requested Arizona Title to retain in trust the sum of $4,021.70

from the escrow for satisfaction of the tax liens and mortgage if there ever should be a move to enforce them by foreclosure. Arizona Title agreed and issued its title insurance policy to the purchaser. The liens and mortgage remain of record to this date.

In 1975, the appellants commenced an action against Arizona Title for the retained sum, contending that the tax liens and mortgage were no longer enforceable. Arizona Title conceded that the debt secured by the mortgage was barred by the statute of limitations, and appellants were granted judgment on the pleadings for $2,028.18. On cross motions for summary judgment regarding the tax liens the court found for Arizona Title.

The issues raised on appeal are:

1. Are the transaction privilege tax liens filed in 1961 against the appellants and the Butlers still enforceable by foreclosure by the State of Arizona?

2. Is the appellants' present action a collateral attack on the liens and, therefore, not maintainable at law against Arizona Title?

We affirm the judgment of the lower court on the basis of the first issue, and need not address the second.

The tax liens were created pursuant to A.R.S. § 42–1335.[1]

§ 42–1335. Tax lien; notice; priority of lien

A. Any tax, penalty or interest imposed under this article which has become final, as provided in this article, shall become a lien upon the commission issuing a notice and claim of lien setting forth the name of the taxpayer, the amount of the tax, penalty and interest, the period or periods for which due, the date of accrual thereof and stating that the state claims a lien therefor.

B. The notice and claim of lien shall be issued under the official seal of the commission and signed by its chairman and shall be recorded in the office of the county recorder of any county in which the taxpayer owns property. After the notice and claim of lien is filed, the taxes, penalties and interest in the amounts specified therein shall be a lien on all real and personal property of the taxpayer located in such county, superior to all other liens and assessments placed of record subsequent to filing of the notice and claim of lien, except liens for ad valorem taxes.

In order to enforce the liens the state would have to proceed pursuant to § 42–1336, as amended.

§ 42–1336. Warrant for collection of delinquent taxes; recording and release of notice and claim of lien.

A. After notice and claim of lien as provided by § 42–1335 has been recorded, or concurrently therewith, the department shall issue a warrant under the official seal of the department signed by the director directed to any agent of the department authorized to collect taxes, commanding him to levy upon and sell the real and personal property of the taxpayer found within any county in this state for the payment of the amount of such tax with the added penalties, interest and cost of executing the warrant, return such warrant to the director and pay to him the money collected by virtue thereof, by a time to be therein specified not to exceed six months from the date of the warrant, or if no collection is made, then to return the warrant to the director at the end of six months with a report of the reasons for failure to collect the amount therein required.

B. In the execution of such warrant, the agent shall have all the powers conferred by law on sheriffs, but he shall not be entitled to any fee or compensation in excess of actual expenses paid in performance of such duty. Upon receipt of the warrant, the agent shall thereupon proceed upon the warrant with like effect and in the same manner prescribed by

---

1. A.R.S. § 42–1335 was amended in 1973 when the Department of Revenue was created, but the new law is in substance the same as the one in effect in 1961. *See* 1973 Session Laws of Arizona, Vol. 1, p. 788.

law in respect to execution issued against property upon a judgment of a court of record.

C. The agent to whom the warrant is directed, shall, within five days after receipt thereof, file a copy thereof with the clerk of the superior court in any county within this state in which the taxpayer has property, and the clerk shall thereupon enter on the judgment docket, in the column of judgment debtors, the name of the delinquent taxpayer mentioned in the warrant and, in the appropriate columns, the amount of the tax or portion thereof, penalties and interest for which the warrant was issued and the date when such copy was filed and docketed, and thereupon the amount of the warrant so docketed shall become a lien upon the title to any interest in real or personal property of the delinquent taxpayer against whom it is issued in the same manner as a judgment duly docketed in the office of the clerk of the superior court.

D. The director or his agent to whom the warrant is directed may file with the county recorder of any county within this state in which a taxpayer has property an abstract of the judgment entered by the clerk of the superior court, and the county recorder shall thereupon record the abstract in the records of abstracts of judgments in the same manner as any other judgment entered by a superior court of the state. The abstract when recorded shall become a lien upon the title to any interest in real or personal property of the taxpayer against whom it is issued in the same manner as any other abstract of judgment duly recorded in the office of the county recorder.

E. If a warrant is returned not satisfied in full, the department shall have the same remedies to enforce the claim for taxes against the delinquent taxpayer as if the state had recovered judgment against the delinquent taxpayer for the amount of the tax.

F. Any lien perfected pursuant to this article shall, upon payment of the taxes, penalties and interest affected thereby, be released by the department in the same manner as mortgages and judgments are released. As amended Laws 1973, Ch. 123, § 104; Laws 1974, Ch. 68, § 23.

The appellants would equate the tax liens to judgment liens on real property, A.R.S. § 33–961, which expire after five years, A.R.S. § 33–964, if not extended pursuant to A.R.S. §§ 12–1612, 12–1613. The argument depends on the language of § 42–1336(C) and (D), referring to the lien created upon the filing and docketing in superior court of a warrant for the collection of delinquent taxes, rather than the § 42–1335 liens at issue. Even under statutes similar to § 42–1336, however, courts that have considered the question do not agree. *Riggan v. Director of Revenue*, 203 Kan. 129, 453 P.2d 52 (1969); *State v. Berry*, 8 Ohio App.2d 72, 220 N.E.2d 671 (1966).

█ Tax liens are creatures of statute. The legislature has plenary power over the subject of taxation and may provide for such liens and fix the terms upon which they can be extinguished. *Ingraham v. Forman*, 49 Ariz. 29, 63 P.2d 998 (1937). Where the legislature has intended that the remedy of foreclosure be barred by the passage of time, it has said so. For example, the property tax lien under § 42–312(B) is perpetual, *Packard Contracting Co. v. Roberts*, 70 Ariz. 411, 222 P.2d 791 (1950), but prior to the 1974 amendment to § 42–386(B), real property subject to the lien could not be sold for unpaid taxes after five years unless advertised within the five years.[2] *Linville v. Cheney*, 60 Ariz. 325, 137 P.2d 395 (1943).

█ The state is not barred from enforcing tax liens unless it has so limited itself. There being no such limitation as to the liens in question, Arizona Title properly retained in trust the remaining funds from

2. By adding Section C to § 42–386, the legislature in 1974 provided for the sale of such properties.

the escrow, pursuant to agreement of the parties.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.