162 P.3d 1267

PLM TAX CERTIFICATE PROGRAM
1991–92, L.P., a Kansas limited part-
nership, Plaintiff–Appellant,

v.

David SCHWEIKERT, Maricopa County
Treasurer; Maricopa County, a body
politic, Defendants–Appellees.

No. 1 CA–CV 06–0467.

Court of Appeals of Arizona,
Division 1, Department D.

July 17, 2007.

Paul S. Harter, PC, by Paul S. Harter, Alicia Mykyta, Phoenix, Attorneys for Appellant.

Hebert Schenk, PC, by Barbara Lee Caldwell, Phoenix, Attorneys for Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 PLM Tax Certificate Program 1991–92, L.P. ("PLM") appeals the trial court's summary judgment in favor of the Maricopa County Treasurer ("Treasurer") and Maricopa County ("the County"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Stephen Kohner owned real property encumbered by a deed of trust in which Sun State Savings and Loan Association ("Sun State") was named beneficiary. Sun State was placed in receivership and the Resolution Trust Corporation ("RTC") was named as the receiver. The Treasurer sold PLM a certificate of purchase representing two tax liens of $31,935.40 and $26,763.07 for unpaid taxes on the property in 1990 and 1991.

¶ 3 In 1995, PLM filed suit against Kohner to foreclose its tax liens. In 1996, the RTC assigned the deed of trust to Denton Invest-ments, Inc. ("Denton"), which obtained title to the property after Kohner defaulted. PLM then added Denton as a defendant in the foreclosure proceedings. The trial court granted summary judgment to PLM, allowing the foreclosure, and Denton appealed.

¶ 4 We reversed the trial court's judgment, in *PLM Tax Certificate Program 1991–92, L.P. v. Denton Investments, Inc.,* holding that federal law precluded involuntary liens from attaching to property during a federal receivership. 195 Ariz. 210, 212, ¶ 9, 986 P.2d 243, 245 (App.1999). We concluded that the tax liens purchased by PLM were invalid because at the time the liens would have attached to the property, the property was in receivership. *Id.* at 212, ¶ 10, 986 P.2d at 245.

¶ 5 PLM then sued the Treasurer and the County. It alleged that the Treasurer had sold it invalid liens, based on our ruling that no liens had attached to the property while owned by the RTC. The complaint asserted a claim for tax sale in error, pursuant to Arizona Revised Statutes ("A.R.S.") section 42–18125 (1999), as well as claims for misrepresentation and unjust enrichment. PLM sought recovery of the purchase price paid for the liens plus interest.

¶ 6 The County and the Treasurer removed the case to federal district court and filed a cross-complaint against the Federal Deposit Insurance Corporation ("FDIC"), the successor to the RTC, on the theory that if the liens were not valid, the FDIC was personally liable for the taxes.

¶ 7 In ruling on the cross-motions for summary judgment, the district court found that because the FDIC (then the RTC) did not own the property but held only a lien interest in the property, federal law did not preclude the liens from attaching. The district court found the liens to be valid, dismissed the claims against the FDIC, and remanded the case to the Maricopa County Superior Court.

¶ 8 On remand, PLM moved for summary judgment on its claims for sale in error and unjust enrichment. The trial court found that it was bound by this court's determination in *PLM v. Denton* that the liens were invalid, rather than the district court's deci-

sion to the contrary. Because the liens were invalid, the court found that the Treasurer had no liens to sell and therefore that the sale was in error under A.R.S. § 42–18125. Accordingly, the trial court granted PLM's motion for summary judgment on its sale in error claim and awarded PLM the purchase price of the liens plus interest and attorneys' fees. The trial court also granted summary judgment to the Treasurer and the County on PLM's claims for unjust enrichment, stating:

> The Court is of the opinion that the county has not been "unjustly enriched" and that resort to that theory of recovery is unnecessary because the statutory remedy for a "sale in error" provides Plaintiff complete relief.

¶ 9 The County and Treasurer appealed, and we found that the superior court had not erred in following this court's decision in *PLM v. Denton. PLM Tax Certificate Program 1991–92, L.P. v. Todd,* 1 CA–CV 03–0114, at 5 ¶ 10 (Ariz.App. Apr. 15, 2004) (mem.decision). However, we found that the trial court had misapplied the statute governing erroneous sales, and held that, because the applicable statute controlled only when "no tax is due" and because PLM failed to prove no tax was due on the property, the statute did not apply. *Id.* at 7–9, ¶¶ 14–16. We also noted that no remedy other than the statute was available to a purchaser of an invalid tax lien. *Id.* at 10, ¶ 18. We therefore reversed the trial court and remanded the case.

¶ 10 On remand, the parties again filed cross-motions for summary judgment. PLM argued that the trial court had previously denied its motion for summary judgment on its unjust enrichment claim solely because the court found that PLM had been given full relief by the error in sale statute. Because the trial court's decision regarding the error in sale statute was reversed on appeal, PLM argued that the court should vacate its prior ruling regarding unjust enrichment and grant PLM summary judgment on that claim. PLM also argued that the Treasurer was liable for either negligent or innocent misrepresentation. PLM asserted that the

Treasurer had a duty to sell at its annual auction only valid liens on real property and that it had breached that statutory duty by selling tax liens subsequently determined to be invalid. PLM asserted that the Treasurer should have determined whether circumstances existed that prevented the County's lien from attaching to the property.

¶ 11 The County and Treasurer argued that the trial court could not vacate its prior decision regarding unjust enrichment, noting that PLM had not raised the issue on appeal. The County and Treasurer also denied the existence of evidence that the Treasurer had made any misrepresentation, asserting that the Treasurer had complied with his statutory obligations in noticing and conducting the tax lien sales.

¶ 12 The trial court denied PLM's request to vacate the prior decision regarding its unjust enrichment claim.[1] The trial court concluded that the unjust enrichment claim had been rejected not only because of an alternative available remedy but also because the court found that the County had not been unjustly enriched. The court noted our holding that no remedy other than the sale in error statute was available to a purchaser of an invalid lien. The trial court also found that there was no indication that the Treasurer had misrepresented the liens, and rejected the assertion that the Treasurer should have determined the potential invalidity of the liens through his own legal research. Accordingly, the trial court granted the cross-motion for summary judgment.

¶ 13 PLM filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 14 Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). In reviewing a motion for summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the trial court

---

1. The earlier ruling had been made by a different judge.

properly applied the law. *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000).

## Unjust Enrichment

¶ 15 PLM first argues that the trial court should have set aside its prior ruling denying PLM's claim for unjust enrichment and should have granted PLM summary judgment on that theory. PLM posits that the trial court's sole reason for rejecting the unjust enrichment claim was its determination that complete relief was available under the remedy afforded by the erroneous sale statute, A.R.S. § 42–18125. Because we subsequently reversed the trial court's decision finding the erroneous sale statute applicable, PLM argues that the trial court's basis for initially rejecting its unjust enrichment claim was eliminated, and PLM should now be allowed to reassert that claim.

¶ 16 The trial court's initial ruling, however, not only stated that resort to the unjust enrichment theory was unnecessary as the statute provided a full remedy, but also expressed the opinion that the County had not been unjustly enriched. The availability of the statutory remedy was not the sole reason for its ruling. The trial court granted summary judgment on that claim to the County and the ·Treasurer, and PLM could have raised this issue in its first appeal, but apparently did not do so.[2] Issues that should have been raised in a first appeal cannot be raised or considered in a second appeal. *Bike Fashion Corp. v. Kramer,* 202 Ariz. 420, 425, ¶ 20, 46 P.3d 431, 436 (App. 2002). We therefore do not consider PLM's argument regarding unjust enrichment.

## Negligent Misrepresentation

¶ 17 PLM next argues that the Treasurer's negligent misrepresentation that the tax liens were valid entitles it to recover the purchase price of the liens plus statutory interest. We, however, disagree.

¶ 18 A person may be liable for negligent misrepresentation if he fails to exercise reasonable care and competence in obtaining or communicating information and thereby, in the course of his business or employment, provides false information for the guidance of others in their business transactions, causing the recipients of the information to incur damages because they justifiably relied on the false information. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). To be liable, the person charged with negligent misrepresentation must have owed a duty to the injured party. *Van Buren v. Pima Cmty. Coll. Dist. Bd.,* 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976).

¶ 19 PLM asserts that the Treasurer had a statutory duty to publish information in the form of a list of properties on which taxes were owed and on which tax liens would be sold and that the information was for the guidance of potential purchasers of those tax liens, such as PLM. The Treasurer's duty, according to PLM, required him to offer for sale only valid tax liens on real property. PLM argues that the Treasurer breached his duty by advertising for sale and selling liens that were not actually valid. Because the purported liens and the certificate of purchase PLM obtained from the Treasurer were of no value, PLM concludes it was damaged by the Treasurer's misrepresentation that he was selling valid liens.

¶ 20 The Treasurer's obligations in conducting sales of tax liens are governed by statute. Under A.R.S. § 42–18106, the Treasurer "shall prepare," on or before December 31 of each year, "a list of all real property on which the taxes for prior tax years are unpaid and delinquent" and "an accompanying notice stating that the treasurer will sell a tax lien on each parcel of real property at public auction for taxes, penalties, interest and charges on the real property." A.R.S. § 42–18106(A) (2006).[3] The notice must in-

---

**2.** In response to PLM's request that the trial court vacate its earlier ruling on unjust enrichment, the County and the Treasurer asserted that PLM had not addressed the issue on appeal. PLM has not disputed that assertion.

**3.** The prior version of the statute, in effect at the time of the sale, was substantially similar but also provided that the notice state that the Treasurer would sell a tax lien for taxes, penalties, interest, and charges assessed for personal property. *See* A.R.S. § 42–387 (Supp.1989).

clude certain specific information, and the Treasurer must publish a copy of the list and the notice prior to the sale. A.R.S. §§ 42–18106(B), –18109 (2006). Statutes also dictate the procedure the Treasurer must follow in the conduct of the sale. A.R.S. §§ 42–18112, –18113, 18114 (2006).

¶ 21 PLM contends that the Treasurer negligently misrepresented that the liens he was selling were valid because he failed to determine whether circumstances existed that prevented the liens from attaching to the property. However, although PLM notes the statutory nature of the Treasurer's obligations, it does not identify, nor do we find, any statute that imposes a duty on the Treasurer to determine the validity of a tax lien offered for sale. In preparing the list for the sale of tax liens, the Treasurer is required by statute only to determine those properties for which taxes have not been paid and offer to sell tax liens on such properties. A.R.S. § 42–18106(A). The applicable statutes do not impose a duty on the Treasurer to determine whether a tax lien that is sold might later be found invalid. *See Suzico, Inc. v. Maricopa County,* 187 Ariz. 269, 272, 928 P.2d 693, 696 (App.1996) (statute did not impose duty on County to determine whether property on which tax lien was sold was subject to bankruptcy petition). Because the Treasurer had no duty to determine the potential invalidity of the liens, he cannot be liable for any purported misrepresentation regarding the validity of the liens.

**Rescission**

¶ 22 Finally, PLM argues that it is entitled to rescission of its purchase of the liens because the Treasurer innocently misrepresented that he was conveying valid tax liens. The County and the Treasurer argue that rescission does not apply because rescission is a contract remedy and no contract is involved.

¶ 23 PLM does not cite, nor have we found, any authority for its contention that purchasing a tax lien creates a contract between the purchaser and the Treasurer that would support a claim for rescission.[4] Tax liens are creatures of statute over which the legislature has plenary authority. *Fields v. Arizona Title Ins. & Trust Co.,* 117 Ariz. 569, 571, 574 P.2d 57, 59 (App.1977). The legislature has established a detailed statutory scheme governing the sale, purchase, and redemption of tax liens. In doing so, it specified the circumstances under which a purchaser could seek recovery of the purchase price paid for a tax lien when the lien is sold on property on which no tax was due. A.R.S. § 42–18125. But the purchaser has no right to recover the purchase price paid for a lien at a sale because of a defect in the lien unless a statute authorizes such recovery. *See Suzico,* 187 Ariz. at 272, 928 P.2d at 696 (if obligation to pay interest on returned tax lien existed apart from statute, obligation under statute would be superfluous); *cf. Copper Belle Mining Co. of W. Virginia v. Gleeson,* 14 Ariz. 548, 553, 134 P. 285, 287 (1913) ("[I]n the absence of a statute a purchaser at an execution sale has no right to recover the purchase money paid by him from the execution creditor *merely* because the execution debtor has no title to the property sold, and the sale thereof passes no title to the property."). No statute authorizes recovery under the circumstances here. Purchasing a tax lien entails risk and the onus is on the purchaser to protect its own interests. *Suzico,* 187 Ariz. at 272, 928 P.2d at 696. Accordingly, the trial court did not err in determining that PLM may not maintain a rescission claim.

**CONCLUSION**

¶ 24 For the reasons discussed above, we affirm.

---

**4.** PLM analogizes this situation to a trustee's sale, asserting that the winning bidder at a trustee's sale enters into a contract with the trustee. The authority cited in support, however, A.R.S. § 33–810, does not establish that such a sale creates a contract. PLM also analogizes the situation to an auction whereby the purchaser at an auction may recover from the seller for breach of contract. In the case cited by PLM, however, *Altfillisch Constr. Co. v. Torgerson Constr. Corp.,* 120 Ariz. 438, 586 P.2d 999 (App. 1978), the buyer and seller actually entered into a sales contract with specific terms governing the sale.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and SUSAN A. EHRLICH, Judge.

