232 P.3d 756

LEVERAGED LAND COMPANY, L.L.C., an Arizona limited liability company; and Norman Montgomery and Cheryl Montgomery, husband and wife, Plaintiffs/Appellants,

v.

Michael W. HODGES, an unmarried man, Defendant/Appellee.

Raven II Holdings, L.L.C., an Arizona limited liability company; and Hanna 120 Holdings, L.L.C., an Arizona limited liability company, Intervenors/Appellants,

v.

Michael W. Hodges, an unmarried man; David H. Cain, a married man, Defendants/Appellees.

David H. Cain, a married man, Defendant/Counterclaimant/Appellee,

v.

Raven II Holdings, L.L.C., an Arizona limited liability company; and Hanna 120 Holdings, L.L.C., an Arizona limited liability company, Intervenors/Counterdefendants/Appellants.

David H. Cain, a married man, Defendant/Counterclaimant/Appellee,

v.

Leveraged Land Co., L.L.C., an Arizona limited liability company; and Norman Montgomery and Cheryl Montgomery, husband and wife, Plaintiffs/Counterdefendants/Appellants.

David H. Cain, a married man, Defendant/Third–Party Plaintiff/Appellee,

v.

Bingham Arizona Land, L.L.C., an Arizona limited liability company, Third–Party Defendant/Appellant.

Nos. 2 CA–CV 2009–0093, 2 CA–CV 2009–0094, 2 CA–CV 2009–0095.

Court of Appeals of Arizona, Division 2, Department B.

May 27, 2010.

Cooper & Rueter, L.L.P. By Stephen R. Cooper, Casa Grande, Attorneys for Bingham Arizona Land.

Barry Becker, P.C. By Barry Becker, Phoenix, Attorney for Hodges and Cain.

Snell & Wilmer L.L.P. By Andrew M. Jacobs, William N. Poorten III, and Robert C. Garcia, Tucson, Attorneys for Raven II Holdings and Hanna 120 Holdings.

## OPINION

BRAMMER, Judge.

¶ 1 This is the third appeal stemming from a tax lien foreclosure and redemption of real property located in Pinal County. *See generally Leveraged Land Co. v. Hodges (Hodges II)*, No. 2 CA–CV 2009–0057, 2009 WL 3087551 (memorandum decision filed Sept. 24, 2009); *Leveraged Land Co. v. Hodges (Hodges I)*, No. 2 CA–CV 2006–0210, 2007 WL 5556356 (memorandum decision filed Aug. 8, 2007).[1] After protracted litigation, the trial court granted summary judgment in favor of appellees Michael Hodges and David Cain and quieted title to the land in Cain's name. Appellants Raven II Holdings, L.L.C., and Hanna 120 Holdings, L.L.C., (collectively "Raven") and Bingham Arizona Land, L.L.C., challenge the court's grant of summary judgment claiming they were bona fide purchasers of the property. Bingham also challenges the award of attorney fees to Hodges and Cain. Appellants Leveraged Land Company, L.L.C., and Norman and Cheryl Montgomery (collectively "LLC") challenge the court's denial of nearly all their requested attorney fees from Hodges and Cain. We vacate the court's award of attorney fees to LLC and remand the case to the trial court to determine a reasonable fee award, but otherwise affirm the judgment.

### Factual and Procedural Background

¶ 2 The background of this case is set forth in our prior memorandum decisions and may be summarized, in relevant part, as follows. In June 2005, after Hodges had been served

Quarles & Brady LLP By Craig H. Kaufman and Jeremy A. Lite, Tucson, Attorneys for Leveraged Land Company and Norman and Cheryl Montgomery.

---

1. Another appeal was taken by two business entities in *Leveraged Land Co. v. VEM Corp.*, No. 2 CA–CV 2006–0219, 2007 WL 5556381 (memorandum decision filed Aug. 17, 2007). In that decision, however, we determined one entity had not appeared below and the other had not intervened properly so as to contest the action. *Id.* ¶¶ 7–8, 14.

with notice by publication of a tax lien redemption foreclosure, a default judgment was entered in favor of LLC, and it took title to his land. *Hodges I,* No. 2 CA–CV 2006–0210, ¶ 2. LLC subsequently sold the land to Raven, and Raven conveyed a partial interest in the property to Bingham in February 2007.

¶ 3 In November 2005, Hodges moved to set aside the judgment for lack of jurisdiction due to insufficient service of process. *Id.* ¶ 3. He also moved for a new trial on the ground that he was able to redeem the tax lien. *Id.* ¶¶ 3, 10. LLC and Raven, the intervening party, successfully opposed the motions below. On appeal, we determined that service by publication was appropriate and that the trial court had jurisdiction to enter the default judgment. *Id.* ¶¶ 6–9. We reversed the court's denial of Hodges's motion for a new trial and, because Hodges timely had shown he was able to redeem the tax liens, remanded the case to the trial court to allow him to do so. *Id.* ¶¶ 15–16, 18–19.

¶ 4 On remand, the trial court granted a new trial and entered an order restoring Hodges's right to redeem the tax liens. *Hodges II,* No. 2 CA–CV 2009–0057, ¶ 4. Hodges then redeemed the tax liens with money provided by Cain, his successor in interest, who had been permitted to intervene in the action. *Id.* ¶¶ 4, 6, 15. LLC then filed a complaint against Hodges and Cain, challenging the validity of Hodges's redemption. The court granted partial summary judgment in favor of Hodges and Cain, dismissed the claims in LLC's amended complaint, and entered judgment pursuant to Rule 54(b), Ariz. R. Civ. P. *Hodges II,* No. 2 CA–CV 2009–0057, ¶¶ 5, 7. As it did below, LLC challenged Hodges's redemption on appeal, and we affirmed. *Id.* ¶ 1.

¶ 5 While *Hodges II* was pending, Hodges and Cain moved for summary judgment against Raven and Bingham, asking the trial court to quiet title to the property in Cain. The court granted the motion, rejecting arguments by Raven and Bingham that they were bona fide purchasers of the land. In its final judgment, the court ordered Bingham and Raven to pay Hodges and Cain their attorney fees. It also required Hodges and

Cain to pay $1,500 of LLC's attorney fees pursuant to A.R.S. § 42–18206. LLC, Raven, and Bingham filed separate appeals, which we have consolidated.

## Discussion

*Bona Fide Purchasers*

¶ 6 Raven and Bingham challenge the trial court's finding that they were not bona fide purchasers of the subject property. "The term 'bona fide purchaser' is often used to refer to one who purchases property for value and without notice" of another's interest in it. *First Am. Title Ins. Co. v. Action Acquisitions, LLC,* 218 Ariz. 394, ¶ 12, 187 P.3d 1107, 1111 (2008); *see also Davis v. Kleindienst,* 64 Ariz. 251, 258, 169 P.2d 78, 82 (1946); *Sprang v. Petersen Lumber, Inc.,* 165 Ariz. 257, 263, 798 P.2d 395, 401 (App.1990). Raven claims it lacked the requisite notice because, when it purchased the land from LLC, Hodges merely had a potential interest in the property but had not actually asserted a claim to it. Bingham argues it lacked notice because neither Hodges nor Cain recorded a lis pendens pursuant to A.R.S. § 12–1191. Both appellants' arguments are unavailing in light of our prior decisions and the case law cited therein.

¶ 7 In *Hodges I,* we held Rule 59(j)(1), Ariz. R. Civ. P., and A.R.S. § 12–1560(A) give a person served by publication one year to appear and redeem tax liens. *Hodges I,* No. 2 CA–CV 2006–0210, ¶¶ 11–12. "Under *Southwest Metals* [*Co. v. Snedaker,* 59 Ariz. 374, 129 P.2d 314 (1942)], the end result of a successful Rule 59(j) challenge is restoration of a defendant's right to redeem under what is now § 42–18206." *Hodges I,* No. 2 CA–CV 2006–0210, ¶ 18. The party prevailing under a Rule 59(j) motion is placed in the same legal position he would have been in had he appeared before the entry of default judgment. *See Nielson v. Patterson,* 204 Ariz. 530, ¶ 12, 65 P.3d 911, 914 (2003). Hence, "[p]urchasing a tax lien entails risk[,] and the onus is on the purchaser to protect its own interests." *PLM Tax Certificate Program 1991–92, L.P. v. Schweikert,* 216 Ariz. 47, ¶ 23, 162 P.3d 1267, 1271 (App.2007).

¶ 8 As the trial court observed here, the treasurer's deed obtained by LLC was recorded properly and the default judgment was attached to it, serving as constructive notice to all persons of its existence. *See* A.R.S. § 33–416. LLC, Raven, and Bingham thereby were made aware of the legal consequences of a successful Rule 59(j) motion by Hodges. *See Conway v. State Consol. Pub. Co.*, 57 Ariz. 162, 171, 112 P.2d 218, 222 (1941) ("Every one is presumed to know the law."). Rejecting LLC's equitable arguments concerning the validity of the redemption in *Hodges II*, we stated:

> Despite obtaining a default judgment to foreclose Hodges's right of redemption, LLC knew the judgment obtained would remain vulnerable to a Rule 59(j) motion for a new trial for up to one year. Thus, the risk of disruptions to any subsequent conveyances of the foreclosed property fell squarely on LLC and its successors-in-interest.

2 CA–CV 2009–0057, ¶ 16.

 ¶ 9 In sum, Raven and Bingham had notice of Hodges's interest in the property and, therefore, were not bona fide purchasers. This is the law of the case as provided by *Hodges I. See Dancing Sunshines Lounge v. Indus. Comm'n*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986) (explaining "the decision of a court in a case is the law of that case on the issues decided throughout all subsequent proceedings in both the trial and appellate courts, provided the facts, issues and evidence are substantially the same as those upon which the first decision rested"). Accordingly, the trial court did not err in granting summary judgment in favor of Hodges and Cain and quieting title in Cain.

*Attorney Fees Against Bingham.*

¶ 10 Bingham claims the trial court erred in ordering it to pay attorney fees to Cain because Cain's application for fees was un-

timely under Rule 54(g)(2), Ariz. R. Civ. P.[2] The interpretation of Rule 54(g)(2) is a question of law, which we review de novo, although we review the court's application of the rule for an abuse of discretion. *See King v. Titsworth*, 221 Ariz. 597, ¶ 8, 212 P.3d 935, 936 (App.2009).

¶ 11 Rule 54(g)(2) provides that a "motion for attorneys' fees shall be filed within 20 days from the clerk's mailing of a decision on the merits of the cause, unless extended by the trial court." Thus, the rule plainly gives the trial court the discretion to extend the time for requesting attorney fees and, absent an abuse of that discretion, we will not disturb the court's ruling. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, ¶¶ 60, 62, 224 P.3d 960, 976–77 (App.2010). On February 11, 2009, the court mailed its decision quieting title and ruling on the various motions for summary judgment.[3] Cain had requested attorney fees in his answer, and the form of judgment he lodged January 27 specified he would be filing a motion for fees. Before that occurred, however, LLC filed a motion for costs and attorney fees. Cain and Hodges requested a hearing on the issue and the court scheduled oral argument for April 3, 2009, regarding the forms of judgment and the motion for attorney fees. It ordered the parties "to meet and confer regarding the form of judgment to determine if a stipulated judgment may be entered in this matter with the issue of fees being left in blank for the Court to insert."

¶ 12 Cain filed his motion for attorney fees on the day of the hearing. He had mailed it to the parties two days earlier. After a hearing on the motion, the trial court took the matter under advisement and permitted Bingham to file a response. In its response, Bingham's only objection to awarding Cain his fees was that Cain's motion had been filed untimely. The court disagreed and

---

2. Although the trial court awarded attorney fees to both Cain and Hodges, it was Cain, specifically, who requested fees against Bingham in his third-party complaint. Cain and Hodges were represented by the same attorney.

3. Bingham incorrectly identifies January 12, 2009, the date the trial court held the hearing

and ruled on these matters, as the relevant date. In addition, Bingham has provided incorrect citations to the record regarding this hearing, referring to the partial summary judgment ruling that was the subject of the appeal in *Hodges II*. We nevertheless reach the merits of the issue presented, as it was raised squarely below.

granted the motion, awarding Cain attorney fees.

¶ 13 As noted, Rule 54(g)(2) gives a trial court discretion to extend the time for filing a motion for fees. *See Aztar Corp.*, 223 Ariz. 463, ¶ 60, 224 P.3d at 976. Here, the trial court implicitly extended the twenty-day time limit to April 3, the date of the hearing. Because Bingham was given the opportunity to object to Cain's motion for attorney fees both during the hearing on the motion and in its written response, we cannot find the court abused its discretion in extending the time for filing the motion. *See id.* ¶ 62 (finding trial court did not abuse discretion by granting untimely application for attorney fees given absence of prejudice to opposing party resulting from extension of time limit). Nor did the court abuse its discretion by failing to specify its reasons for extending the time for filing the motion. *Cf. Nat'l Broker Assocs., Inc. v. Marlyn Nutraceuticals, Inc.*, 211 Ariz. 210, ¶ 38, 119 P.3d 477, 485 (App.2005) (trial court does not abuse discretion "by summarily overruling objections to an untimely statement of costs").

¶ 14 Bingham further argues the trial court committed reversible error in awarding attorney fees in the quiet title action pursuant to A.R.S. § 12–1103 because Cain did not tender five dollars along with a request for the execution of a quit claim deed as required by § 12–1103(B). *See Lange v. Lotzer*, 151 Ariz. 260, 262, 727 P.2d 38, 40 (App.1986) (holding payment of five dollars to other party prerequisite for recovering attorney fees pursuant to § 12–1103(B)). We review a fee award under this statute for an abuse of discretion. *See Sonnenberg v. Ashby*, 17 Ariz.App. 60, 62, 495 P.2d 500, 502 (1972). We find no such abuse here.

¶ 15 The record supports the trial court's findings that Cain's counsel sent Bingham correspondence that included a quit claim deed and a check for five dollars. Although "Bingham speculate[d] the check may not have been enclosed," the court found such speculation insufficient and noted it was "not inclined to believe the allegations that no check[ ] w[as] enclosed." As the trier of fact, the court was in the best position to assess and resolve the conflicting evidence, and we defer to its determination that Cain had complied with § 12–1103(B). *See Standage v. Standage*, 147 Ariz. 473, 479–80, 711 P.2d 612, 618–19 (App.1985) (credibility determinations made by trier of fact).

¶ 16 Bingham alternatively argues the trial court abused its discretion in awarding fees under § 12–1103 because litigation in this case was unavoidable and involved novel legal questions. It contends granting a fee award in such circumstances would discourage parties from asserting meritorious claims and defenses. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (identifying factors that may lead court not to award discretionary attorney fees). The court considered these arguments below, necessarily rejecting them, and did not abuse its discretion in doing so.

### Attorney Fees to LLC

¶ 17 The sole issue LLC raises on appeal concerns the trial court's award to it of attorney fees pursuant to A.R.S. § 42–18206. Although LLC had requested attorney fees of $153,182, the court deemed this amount "unreasonable" and awarded it $1,500. LLC argues this constituted reversible error because the amount was arbitrary and had no reasonable basis. Our analysis of this issue revolves around our construction of § 42–18206, which provides:

> Any person who is entitled to redeem under article 4 of this chapter may redeem at any time before judgment is entered, notwithstanding that an action has been commenced, but if the person who redeems has been served personally or by publication in the action, judgment shall be entered in favor of the plaintiff against the person for the costs incurred by the plaintiff, including a reasonable attorney fee to be determined by the court.

Although the court was required to award LLC attorney fees, the amount of fees it deemed reasonable and awarded was for it to determine in the exercise of its discretion; absent an abuse of that discretion, we will not disturb the court's ruling. *See Moedt v. Gen. Motors Corp.*, 204 Ariz. 100, ¶ 17, 60 P.3d 240, 244–45 (App.2002) ("When provided

with discretion to calculate the amount of fees to grant, the court may award less than the requested amount, a calculation not disturbed on appeal absent a clear abuse of the trial court's discretion.").

¶ 18 The affidavit counsel for LLC filed with LLC's application for attorney fees in accordance with *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983), shows the attorney fees requested were incurred after the original default judgment had been entered in its ultimately unsuccessful attempts to prevent Hodges from redeeming the property. Hodges argues § 42–18206 permits recovery only of those fees LLC incurred in obtaining the tax lien judgment, but not any fees it incurred in opposing redemption.

¶ 19 Persons with an interest in property who are ready, willing, and able to redeem their tax liens have a right to do so. *Sw. Metals Co.*, 59 Ariz. at 390, 129 P.2d at 321. This right exists for up to one year if default judgment has been entered after that party was served by publication. *See id.* at 380, 389, 129 P.2d at 317, 321 (interpreting former A.R.S. § 21–1309, now contained in A.R.S. § 12–1560(A) and Rule 59(j)(1)). The issue with which we have been presented is whether a party such as Hodges, who successfully redeems property from a tax lien foreclosure judgment, is required by § 42–18206 to pay the attorney fees reasonably incurred by the judgment holder, here LLC, in resisting the redemption.

¶ 20 To resolve this issue, we must determine the meaning of the language in § 42–18206, which is a question of law we review de novo. *State v. Hansen*, 215 Ariz. 287, ¶ 6, 160 P.3d 166, 168 (2007). In ascertaining the meaning of a statute, we determine the legislature's intent in drafting it and give effect to that intent. *Mejak v. Granville*, 212 Ariz. 555, ¶ 8, 136 P.3d 874, 876 (2006). The best indicator of that intent is the clear language of the statute based on the ordinary meaning of the terms used. *See State v. Miller*, 100 Ariz. 288, 296, 413 P.2d 757, 763 (1966). If a statute is unambiguous and the meaning of

its terms clear, we employ no other principles of statutory construction to determine legislative intent. *See Bilke v. State*, 206 Ariz. 462, ¶ 11, 80 P.3d 269, 271 (2003); *State v. Payne*, 223 Ariz. 555, ¶ 16, 225 P.3d 1131, 1137 (App.2009); *see also Jones v. Paniagua*, 221 Ariz. 441, ¶ 19 & n. 5, 212 P.3d 133, 138–39 & n. 5 (App.2009) (finding reliance on constitutional and legislative history unnecessary to interpret statutory and constitutional provisions in light of provisions' plain meaning).

¶ 21 Section 42–18206 states that, upon redemption, "judgment shall be entered in favor of the plaintiff [here, LLC] against the person [redeeming] for the costs incurred by the plaintiff, including a reasonable attorney fee to be determined by the court." The statute is not ambiguous and we need not look beyond its plain language to determine the legislature's intent.[4] Nor is there anything in the statute that suggests there is a temporal limit to its application, or that it only applies to certain matters and not others.

¶ 22 For this reason, we reject Hodges's argument that LLC's right to attorney fees ended when it obtained the default judgment foreclosing Hodges's right to redeem. The trial court effectively set aside the default judgment when it granted, pursuant to our mandate, Hodges's motion for new trial. *See Nielson v. Patterson*, 204 Ariz. 530, ¶ 12, 65 P.3d 911, 914 (2003) (grant of new trial effectively vacates original judgment and places parties in position occupied before entry of judgment). In any event, LLC's default judgment was superseded entirely by the court's disposal of all of LLC's claims, leaving open only the question whether it was entitled to attorney fees and, if so, how much.

¶ 23 Moreover, Hodges's proposed interpretation of the statute would yield different results if the property owner sought redemption before a default judgment was entered rather than seeking redemption only after such a judgment is entered following the grant of a motion for new trial. Under

---

4. Thus, we need not consider whether the statute's current language as we interpret it fosters unwarranted litigation or whether the statute's

purpose is to encourage persons to assist tax collections by purchasing tax liens.

Hodges's interpretation, if a plaintiff filed an action to foreclose a property owner's right to redeem, and the property owner sought to defend that action by redeeming the lien before a default judgment was entered, the plaintiff would be entitled to reasonable attorney fees incurred in contesting the redemption. But if the property owner delayed his or her attempt to redeem and filed a motion for new trial after the entry of a default judgment, he or she would be protected from the obligation to pay the plaintiffs reasonable attorney fees expended contesting the redemption. We can see no reasoned basis for making a plaintiff's right to recover attorney fees conditioned on the timing of the property owner's attempt to redeem. *See Lake Havasu City v. Mohave County*, 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App.1983) ("Statutes must be given a sensible construction which will avoid absurd results.").

¶ 24 Hodges also appears to suggest a plaintiff's right to attorney fees ends when the property owner makes his or her intent to redeem known. We find no support for this argument in the plain language of § 42–18206. Nor do we find any reasoned basis to engraft such a limitation on the statute, even if we had authority to do so. *See Bilke*, 206 Ariz. 462, ¶ 11, 80 P.3d at 271 ("If the [statutory] language is clear, the court must 'apply it without resorting to other methods of statutory interpretation.'"), *quoting Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d

668, 672 (1994). As this case amply demonstrates, whether a property owner properly can redeem is not always clear. The plaintiff should not be discouraged from litigating that question fully and reasonably. Although we recognize that public policy favors redemption, *see Harbel Oil Co. v. Steele*, 83 Ariz. 181, 185, 318 P.2d 359, 362 (1957), the legislature clearly has made the public policy choice that the plaintiff must be made whole before redemption is complete.[5] As our supreme court observed in *Southwest Metals Co.*, 59 Ariz. at 390–91, 129 P.2d at 321–22, "[i]f redemption is made, plaintiff will receive all that he has expended," and that the defense of redemption to a foreclosure action requires the property owner to not only pay the "amount required for redemption of the property" but also "the costs incurred by plaintiff and a reasonable attorney's fee." And, "the onus is on the purchaser [of a tax lien] to protect its own interests." *PLM Tax Certificate Program 1991–92, L.P.*, 216 Ariz. 47, ¶ 23, 162 P.3d at 1271. Section 42–18206 contemplates compensating the purchaser its reasonable attorney fees in meeting this obligation.

■ ¶ 25 We conclude that, based on the unambiguous terms of the statute, the trial court was required to award LLC its "reasonable" attorney fees.[6] Indeed, the court concluded LLC was entitled to its fees, just not the amount it had sought. But the court abused its discretion by awarding LLC $1,500 in attorney fees. If the award was to

5. Although our dissenting colleague argues our interpretation is inconsistent with the overall statutory scheme, he identifies no part of the scheme in conflict with our result. Instead, he asserts, in essence, that our result conflicts with his view of the statutory scheme's purpose—a point we cannot consider when the plain language of § 42–18206 is unambiguous. *See Bilke*, 206 Ariz. 462, ¶ 11, 80 P.3d at 271.

6. Our dissenting colleague suggests the term "reasonable attorney fee" is vague. We disagree. The term is used throughout Arizona's statutes and case law. The dissent cites no decision, nor are we aware of any, finding this term vague in any context. Indeed, we agree with the dissent that the term contemplates the reasonableness of the rate charged and the hours expended. If hours are expended unreasonably, a party is not entitled to reimbursement for those hours. What reasonable does not mean, contrary to the dissent's position, is "necessary." The legislature

has used the term "necessary" in conjunction with an award of attorney fees on several occasions, limiting the awards to only those fees that are "reasonable and necessary." *See, e.g.*, A.R.S. §§ 6–131(C), 12–348(I)(1), 12–1130(D), 12–2030(B). But it did not do so in § 42–18206. The dissent's characterization of the result we reach as "absurd" simply is inaccurate. "An absurd result is one 'so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.'" *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, ¶ 12, 159 P.3d 547, 550 (App.2006), *quoting State v. Estrada*, 201 Ariz. 247, ¶ 17, 34 P.3d 356, 360 (2001). All we do here is interpret a statute whose specific language requires an award of reasonable attorney fees to the unsuccessful party, without explicit or implicit limitation, to do exactly that.

compensate LLC for fees incurred in connection with obtaining the tax lien judgment, the award cannot be justified because the affidavit and application for fees filed in the trial court did not relate to that work. Accordingly, the court must have intended to award LLC attorney fees incurred in resisting the redemption. But, because the application for fees and supporting affidavit establish significantly more than $1,500 in fees had been incurred, the court erred in awarding that amount.

¶ 26 In awarding LLC $1,500, the trial court found the amount LLC had requested was "unreasonable," adding that it was not "inclined to award costs for [its] unsuccessful appeal ... on the primary issue contested." But the court gave no reason for awarding LLC $1,500.[7] Moreover, the fact that a position advanced by the judgment-holder ultimately was unsuccessful does not require the conclusion it is not entitled to statutorily mandated attorney fees reasonably incurred supporting that position. Indeed, the statute provides attorney fees be recovered by the plaintiff only in the event the plaintiff fails to foreclose the property because the defendant successfully had redeemed the lien. Thus, § 42–18206, unlike other fee-shifting provisions, specifically contemplates that a plaintiff is entitled to attorney fees despite ultimately having been unsuccessful in the underlying litigation.[8] Because the court apparently based its conclusion on the erroneous assumption that LLC necessarily was not entitled to fees for an "unsuccessful appeal," the court abused its discretion. See Twin City Fire Ins. Co. v. Burke, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 285 (2003) (trial court abuses discretion when it commits legal error in reaching discretionary conclusion).

¶ 27 Moreover, the trial court denied Hodges's motion for new trial and determined that service by publication had been effective. Although we reversed the denial of Hodges's motion for new trial on appeal, we affirmed the court's determination that service by publication had been effective. Even a conservative evaluation of LLC's fee affidavit establishes it incurred a minimum of $10,000 in attorney fees litigating those issues in the trial court. Given that the court initially agreed with LLC's position on these issues, the court's apparent later determination that the majority of those fees were unreasonable is not supported by the record.[9]

¶ 28 Hodges asserts we can affirm the award in any event because the positions

---

**7.** We do not suggest a trial court must articulate its reasoning for an attorney fee award under § 42–18206 for the award to be affirmed on appeal. See Hunt Inv. Co. v. Eliot, 154 Ariz. 357, 361–62, 742 P.2d 858, 862–63 (App.1987) (affirming attorney fee award where "trial court gave no indication of how it determined" award to be reasonable). We emphasize, however, that it is better practice for a trial court to do so to aid in appellate review. See Associated Indem. Corp. v. Warner, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985).

**8.** We are somewhat perplexed by our dissenting colleague's complaint that our interpretation of the statute incorrectly, and inappropriately, awards fees to a party for having taken unsuccessful legal positions, when the plain language of the statute not only demands that result but, indeed, specifically does not award fees to the successful party. We further observe that A.R.S. § 12–341.01, which awards attorney fees to a successful party in certain circumstances, contemplates the award of fees for advancing unsuccessful legal theories. See China Doll, 138 Ariz. at 189, 673 P.2d at 933 ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories."). We see nothing in § 42–18206 compelling a different conclusion here.

**9.** We observe that the precise scope of reasonable attorney fees under § 42–18206 is an issue of first impression and, as the dissent aptly demonstrates, is subject to reasonable debate. Moreover, we cannot discern what legal standard the trial court used in determining the amount of fees to award. Thus, even if the amount of attorney fees the court awarded arguably was supported by the record, we would nevertheless remand this matter to the trial court to reconsider the request for fees in light of the standards we have adopted in this opinion. Cf. Haroutunian v. Valueoptions, Inc., 218 Ariz. 541, n. 12, 189 P.3d 1114, 1126 n. 12 (App.2008) (Brammer, J., dissenting) (remand for reconsideration proper remedy when unclear whether trial court applied correct legal standard); Warner v. Sw. Desert Images, LLC, 218 Ariz. 121, ¶ 61, 180 P.3d 986, 1004 (App.2008) (permitting parties to present new evidence on remand when deciding issue of first impression where "it would be unfair to have expected the parties or the trial court to have anticipated the [adopted] standard").

LLC had taken below were "frivolous." But the court made no such finding; indeed, the court denied the motion for sanctions Hodges brought on that basis. Moreover, nothing in the record supports Hodges's assertion that LLC's legal positions plainly were baseless. Indeed, many of the issues raised implicated questions of first impression that this court decided on appeal. Although LLC did not prevail, the arguments raised in those appeals were not frivolous.

¶ 29 We also reject Hodges's argument that LLC was not entitled to fees because they had been paid by its former title insurance carrier and there had been no "subrogation of LLC's rights to its . . . insurer." The trial court rejected this argument. As LLC points out, no award of fees would be justified if Hodges were correct. Because Hodges did not cross-appeal from the court's award of attorney fees, he has waived this argument on appeal. *See Bills v. Arizona Bd. of Educ.*, 169 Ariz. 366, 369–70, 819 P.2d 952, 955–56 (App.1991) (absent cross-appeal, appellee may not raise cross-issue that "result[s] in enlargement of appellee's rights or a lessening of appellant's rights on appeal"), *quoting Bowman v. Bd. of Regents*, 162 Ariz. 551, 559, 785 P.2d 71, 79 (App.1989). Finally, Hodges's argument that LLC is not entitled to attorney fees because it "abandoned" its foreclosure action in its first amended complaint is unsupported by the record.

¶ 30 Because the trial court will be required to determine upon remand the amount of attorney fees LLC may recover for its continued resistance to redemption, we address that issue now. LLC clearly had the right to ensure that Hodges's redemption claim was valid, and it is entitled to reasonable attorney fees incurred in contesting that issue. At some point in the proceedings, however, it arguably became apparent to all concerned not only that Hodges had a right to redeem the property, but also that LLC's further resistance was unreasonable. Because § 42–18206 requires recovery of only reasonable fees, it is for the trial court to determine when and the extent to which it

became unreasonable for LLC to pursue its position.

¶ 31 The trial court need not find LLC's legal positions frivolous or baseless in order to conclude the fees it incurred advancing or defending those positions were unreasonable. Instead, the court must determine whether LLC's objections to Hodges's attempt to redeem were sufficiently reasonable and meritorious to justify expenditure of the fees LLC claims.[10] We recognize this approach gives the court considerable discretion to determine an appropriate fee award. But, as we have explained, nothing in the statute's language compels the conclusion that attorney fees expended after a specific point in the foreclosure litigation are, in all cases, unrecoverable. Instead, the statute requires a trial court to determine a reasonable fee award and, in doing so here, to consider the reasonableness of the positions advanced by LLC throughout the case.

*Attorney Fees to Bingham*

¶ 32 On appeal, Bingham requests attorney fees and costs incurred in the trial court pursuant to § 42–18206. Bingham has neither asserted on appeal that it requested fees and costs below nor provided citations to the record demonstrating that it raised this issue there, as required by Rule 13(a)(6), Ariz. R. Civ.App. P. And, a party may not raise an issue for the first time on appeal. *Lemons v. Showcase Motors, Inc.*, 207 Ariz. 537, 541 n. 1, 88 P.3d 1149, 1153 n. 1 (App.2004). Consequently, we do not address this issue on appeal. We deny Bingham's separate request for attorney fees and costs incurred on appeal.

**Disposition**

¶ 33 For the foregoing reasons, we vacate the trial court's award of attorney fees to LLC and remand this matter to the trial court with direction to reconsider LLC's request for attorney fees and enter an award that is consistent with this decision. In all other respects, we affirm. We grant Hodg-

---

10. We are also perplexed by the dissent's declaration that by our construction of § 42–18206 we are "supplement[ing]" its language, particularly when the dissent's analysis replaces the legislature's chosen term—"reasonable"—with one of its own choosing—"necessary."

es's and Cain's request for costs and reasonable attorney fees on appeal, pursuant to § 12–1103(B), as against Raven and Bingham, upon compliance with the requirements of Rule 21, Ariz. R. Civ.App. P. The award shall compensate Hodges and Cain for all arguments raised in the answering brief, notwithstanding Raven's partial withdrawal of its legal argument by motion filed October 21, 2009. Their request for sanctions against Raven and Bingham is denied.

CONCURRING: VIRGINIA C. KELLY, Judge.

ECKERSTROM, Presiding Judge, dissenting.

¶ 34 Under our state's statutory scheme, a party with the ability to redeem a tax lien is entitled to do so at any time before a foreclosure judgment is entered, § 42–18206, and, in the event judgment is entered after service by publication, within one year of the judgment. *Sw. Metals Co. v. Snedaker*, 59 Ariz. 374, 380, 389, 129 P.2d 314, 317, 321 (1942). If a redemption is made, the redeeming party is bound to reimburse the tax lien holder for all the taxes paid plus an annual interest rate determined by auction, which cannot exceed sixteen percent. *See* A.R.S. §§ 42–18053(A), 42–18114, 42–18118(A)–(B), 42–18153(A), 42–18155(A). In the absence of a redemption, a tax lien holder may initiate a foreclosure action in order to obtain title to the property. A.R.S. §§ 42–18201, 42–18204.

¶ 35 This scheme erects a delicate balance that both encourages the purchase of tax liens, thereby ensuring the state receives the taxes it is owed, while simultaneously providing ample opportunity for owners of homes or other property to ultimately retain their property by redemption. In the context of this scheme, the purpose of the attorney fee

provision in § 42–18206 is apparent: to make tax lien holders whole for any legal fees they incurred in taking the steps necessary to foreclose before the property owner demonstrated, by taking specific statutory steps, the ability and intent to redeem. *See Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 361–62, 742 P.2d 858, 862–63 (App.1987) (affirming substantially reduced fee award under predecessor statute to § 42–18206 when record supported conclusion that requested fees were "unnecessary or unreasonable").

¶ 36 In short, § 42–18206 logically allows the tax lien holder to recover from the redeeming property owner necessary fees and costs that could have been spared by an earlier redemption on the part of the property owner. In my view, the majority's broad interpretation of § 42–18206 so as to require the redeeming party to essentially pay all attorney fees, of any species, non-frivolously incurred by the tax lien holder in a foreclosure action—including those fees incurred in unsuccessful, discretionary, contested litigation such as that here—upsets this delicate balance. I, therefore, respectfully dissent.

¶ 37 The majority reaches the result it does today by following the "plain language" of § 42–18206.[11] On its face, the language of this statute supports such a broad construction—its wording does not expressly limit the type of fees included in its purview. But, I cannot agree that the vague term "reasonable attorney fee" conveys as plain a meaning as that ascribed to it by my colleagues. In my view, our understanding of a "reasonable attorney fee" in this context—and whether that phrase unambiguously includes fees for all types of litigation as the majority suggests—must be informed by the statutory scheme within which § 42–18206 is embedded. *See Estate of Hernandez v. Ariz. Bd. of*

---

11. Although the majority quotes from *Southwest Metals* to suggest a plaintiff is entitled to "all that he has expended" in the event of a redemption, that case did not address or resolve the fee issue now before this court. 59 Ariz. at 391–92, 129 P.2d at 322. Read in context, our supreme court's comment in *Southwest Metals* was merely intended to contrast the full recovery of the plaintiff, Snedaker, with the proportionate recovery of a non-party, Colvocoresses, who had an interest in the foreclosed property by virtue of his

ownership of a portion of stock in the dissolved corporation that was the named defendant. *Id.* at 377–78, 391–92, 129 P.2d at 316, 321–22. The fact-specific passage from which the quotation is drawn was merely intended to advise the trial court on how to proceed if a redemption occurred upon remand. *Id.* at 390–91, 129 P.2d at 322. The Southwest Metals court was not engaging in statutory interpretation in this passage, and there are no broad legal principles to be drawn from it.

*Regents,* 177 Ariz. 244, 251, 866 P.2d 1330, 1337 (1994); *see also Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (when ambiguous, court looks to "statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose" to determine legislative intent).

¶ 38 The majority correctly observes that we do not interpret statutes so as to create an absurd result. *See Lake Havasu City v. Mohave County,* 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App.1983). Yet, I fear the majority's construction of the statute creates precisely that. Notably, § 42–18206, by its express terms, is triggered only upon the successful redemption of the property by its owner. Based on the majority's construction of the provision, the redeeming property owner must pay for all of the lien holder's attorney fees that are non-frivolously incurred, including those incurred, as here, to pursue several unsuccessful legal challenges to the redemption. If, on the other hand, a tax lien holder raises a successful challenge to the redemption, it receives no compensation for its fees at all.

¶ 39 Thus, under the majority's interpretation, § 42–18206 is uniquely designed to shift the tax lien holder's cost of unsuccessful litigation onto the prevailing redeeming party, thereby creating clear incentives for the lien holder to vigorously challenge, through litigation, the property owner's right to redeem. From the perspective of the tax lien holder, an aggressive and expensive litigation posture would have the salutary effect of discouraging redemption by property owners unable to afford both their own litigation costs and those of the lien holder. I cannot agree that the legislature intended to so encourage litigation, to reward non-meritorious legal arguments, or to erect unnecessary, and potentially substantial, financial barriers for delinquent property owners to come current on their taxes.

¶ 40 The majority suggests that any other approach would discourage tax lien holders from litigating questions fully and reasonably. But, the presumption that each party bears his or her own attorney fees expended in discretionary litigation, *Bennett v. Baxter Group, Inc.,* 223 Ariz. 414, ¶ 19, 224 P.3d 230, 235 (App.2010), creates the appropriate incentive for all parties to litigate only when the chance of prevailing on the legal question justifies the expense. Moreover, nothing in our statutory scheme suggests that the tax lien holder is the favored party at any stage in the proceedings. *See Harbel Oil Co. v. Steele,* 83 Ariz. 181, 185, 318 P.2d 359, 362 (1957) (noting policy in favor of property redemption).

¶ 41 The majority holds that plaintiffs are entitled to all attorney fees unless, at the time they were expended, the right of the other party to redeem was "apparent to all concerned ... [and] further resistance was unreasonable." [12] Not only is there no authority for that particular standard, I believe this approach to be misguided for two reasons. First, assuming *arguendo* there is an analytical difference between legal arguments raised when it is apparent that they will be unsuccessful and the frivolous claims enumerated in A.R.S. § 12–349(A), trial courts and parties will be forced to grapple with this unclear distinction at length, and a significant amount of financial and judicial resources will be consumed in ancillary proceedings to determine which unsuccessful arguments were "sufficiently ... meritorious" to be compensable.

¶ 42 Second, I believe the majority mistakes the relatively simple determination of reasonableness called for by the statute—such as whether the rate charged by the plaintiff's attorney and the hours expended in seeking the foreclosure were reasonable—with the separate, more complex issue of the reasonableness of the scope of litigation. Given the mandatory nature of the fee award and the straightforward issues typically presented in an action to foreclose a right to redeem—namely, whether the parties served with process have timely paid the money

12. In this way, the majority supplements the "plain language" of the statute with a judicial definition of the term "reasonable." Its alternative formulation of the test is whether the plaintiff's objections to redemption "were sufficiently reasonable and meritorious to justify expenditure of the fees."

required to redeem—I think it most unlikely the legislature contemplated the propriety of shifting fees incurred for contested, discretionary litigation or believed the phrase "reasonable attorney fee" would need any modification to clarify the nature of the attorney fees authorized by § 42–18206. I would therefore hold that § 42–18206 entitles a plaintiff to recover only those attorney fees and costs reasonably incurred in seeking to foreclose a plaintiff's right to redeem, but not those fees incurred in discretionary litigation opposing the redemption.[13] At minimum, I would hold, as a matter of law, that legal fees spent pursuing unsuccessful legal arguments are not "reasonable" within the meaning of § 42–18206.

¶ 43 In my view, the issue raised by LLC does not turn on debatable questions of public policy but may instead be resolved by way of a sensible statutory construction that avoids absurdity and effectuates the intent of the legislature. I have no doubt that the Depression-era legislators who enacted the predecessor statute to § 42–18206[14] did not intend to penalize redeeming parties—including those attempting to prevent foreclosure of their family home—by making them pay their opponent's unsuccessful, discretionary litigation expenses. I therefore cannot join with that portion of my colleagues' opinion relating to LLC's fees.

¶ 44 Similarly, the "apparent ... [and] unreasonable" and "sufficiently ... meritorious" tests the majority announces find no support in either the language of § 42–18206 or the context of the statutory framework within which § 42–18206 resides. The extant statutory scheme relating to tax lien purchases, foreclosure, and redemption is an elegant system that carefully structures financial incentives. That system, I fear, will be significantly damaged by today's decision, which renders § 42–18206 an anomalous, litigation-breeding provision. I agree with the cogently written majority opinion in all other respects.

---

**13.** Despite the extensive litigation in this particular case, our statutes do not anticipate contested legal issues arising from redemption. For instance, A.R.S. § 42–18154(A) provides that "if the county treasurer is satisfied that the person has the right to redeem the tax lien, and if the person pays the amount due, the county treasurer shall issue to the person a certificate of redemption." Redemption thus appears to be primarily an administrative matter.

**14.** 1931 Ariz. Sess. Laws, ch. 103, § 48.